

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2013 NOV 12 AM 10: 44

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KAREN JOHNSON,

        Appellant

        v.

STATE OF WASHINGTON,
DEPARTMENT OF
TRANSPORTATION,

        Respondent.

DIVISION ONE

No. 69046-9-I

PUBLISHED OPINION

FILED: November 12, 2013

DWYER, J. — Karen Johnson accepted a Civil Rule (CR) 68 offer of judgment presented by the Washington State Department of Transportation (DOT), settling her claim against DOT for violations of the Washington Law Against Discrimination (WLAD).[1] After accepting the offer, Johnson petitioned the trial court for an award of attorney fees and costs pursuant to the agreement. The trial court awarded attorney fees and costs to Johnson, but first deducted time spent on Johnson's unsuccessful administrative claim, time spent and costs accrued after the date of the offer, reconstructed hours, and amounts billed by Johnson's psychologist, Dr. Timothy Reisenauer, for time spent on litigation-related matters. Johnson appeals, asserting that the trial court erred in every

[1] Ch. 49.60 RCW.

instance in which it awarded an amount less than that requested. Finding that the trial court did not abuse its discretion by excluding the aforementioned fees and costs, we affirm.

I

Karen Johnson was formerly employed as Assistant Regional Human Resources Manager at the Northwest Region of DOT. Johnson's supervisor at DOT was Corey Moriyama. In June 2008, Johnson submitted an administrative complaint to DOT alleging sex discrimination and retaliation on the part of Moriyama. Johnson retained the law firm of Mann & Kytle, PLLC the following month, and continues to retain the firm on appeal. DOT closed the investigation into Johnson's allegations of discrimination in December 2008 and notified her of its adverse decision in January 2009.

In September 2008, Johnson went on medical leave from her position at DOT. Johnson's psychologist, Dr. Reisenauer, diagnosed her with posttraumatic stress disorder (PTSD), depression, and anxiety caused by her experiences working under Moriyama's supervision at DOT. In November 2008, Dr. Reisenauer provided a Family and Medical Leave Act (FMLA) certification to DOT, stating that Johnson's "condition continues to not allow her to return to work without it seriously jeopardizing her health." In May 2009, Dr. Reisenauer wrote a follow-up letter to DOT, recommending that Johnson remain off work until November 11, 2009. On July 10, 2009, Dr. Reisenauer completed a DOT disability medical questionnaire, stating that while Johnson was capable of performing the essential functions of an Assistant Regional Human Resources

Manager, any return to the DOT would likely retrigger her PTSD symptoms. Based on these reports from Dr. Reisenauer, DOT disability-terminated Johnson on July 23, 2009.

Johnson appealed her disability-termination to the Personnel Resources Board (PRB) on August 6, 2009. In her appeal, Johnson alleged that DOT's decision to disability-terminate her was done in retaliation for her reporting discrimination by Moriyama and that DOT failed to reasonably accommodate her when it did not attempt to find a position for her at another state agency. On February 18, 2010, the PRB found that DOT had no duty to search for positions at other state agencies and denied Johnson's appeal.

On July 7, 2010, Johnson filed a complaint for damages and injunctive relief against DOT, alleging that DOT violated the WLAD by discriminating against her on the basis of age, sex, and disability. Dr. Reisenauer regularly consulted with counsel for Johnson throughout the course of litigation and prepared supporting documentation for Johnson's response to DOT's motion for a CR 35 examination. However, Dr. Reisenauer was neither retained nor listed as an expert witness.

On October 5, 2011, DOT tendered to Johnson and filed with the court a CR 68 offer of judgment. The offer states, in relevant part:

> Under Civil Rule 68, Defendant Department of Transportation, State of Washington offers to allow Plaintiff, Karen Johnson, to take judgment against the State of Washington in this matter pursuant to RCW Ch. 4.92, which judgment shall be Three Hundred and Fifty Thousand dollars ($350,000). Additionally, Defendant State of Washington hereby offers to pay Karen Johnson's awardable costs and reasonable attorney's fees accrued

in this lawsuit up to the date/time of this Offer, which sum shall be determined by the King County Superior Court in the event that counsel for the parties cannot agree within 10 days of Plaintiff's timely acceptance. Plaintiff's claimed costs and fees shall be substantiated by billing records attached to Plaintiff's acceptance of this Offer detailing the nature and date of the work performed and hours accrued.

Johnson unequivocally accepted the offer of judgment on October 17, 2011. As requested, Johnson submitted her counsel's billing records along with her acceptance.

On January 20, 2012, Johnson petitioned the court for an award of attorney fees and costs, which she later amended to comply with the court's filing requirements.[2] Johnson also submitted modified billing records, which included reconstructed time that was not contained in the October 17 record. DOT filed a response to Johnson's petition on February 8, 2012, to which Johnson replied on February 16, 2012.

On March 26, 2012, the trial court submitted a letter to both parties, setting forth the following rulings:

(1) The reasonable hourly rate for Ms. Mann and Mr. Kytle is $425.00; for Mr. Rose $225; for their paralegal $125.00;

(2) Plaintiff is not entitled to fees for hours expended after October 5, 2011 pursuant to the terms of the offer of judgment. *Guerrero v. Cummings*, 70 F.3rd 1111, 1113 (9th Cir. 1995);

(3) Plaintiff is only entitled [to] fees based on hours that were contemporaneously billed. *Mahler v. Szucs*, 135 Wn.2d 398, 434 (1998).

(4) Plaintiff is entitled to fees for all hours expended on this case through October 5, 2011, with the exception of time spent on her administrative challenge to her transfer to another state agency.

---

[2] Johnson's original petition exceeded the maximum number of pages authorized by local court rules.

-4-

(5) Plaintiff is entitled to a multiplier of 1.3.

(6) Plaintiff is entitled to reimbursement for all costs, with the exception of Dr. Reisenauer's bills for work performed before June 17, 2011 as her treating physician. Dr. Reisenauer did not submit a cost bill that segregated the costs incurred as an expert witness rather than as a treating physician. His costs are therefore not recoverable.

Johnson submitted a motion for reconsideration on April 5, 2012. Attached to this motion were separate billings for Dr. Reisenauer's clinical and nonclinical hours, with costs for the nonclinical hours totaling $41,663.56. After receiving a response from DOT, the trial court filed its findings of fact and conclusions of law, which appeared to be unaffected by the information contained in the motion for reconsideration.

The trial court calculated a "lodestar" amount for attorney fees and found that a reasonable rate for partners Ms. Mann and Mr. Kytle was $425, a reasonable rate for associate Mr. Rose was $225, and a reasonable rate for their paralegal was $125. The trial court found that the reasonable number of hours expended were 170.55 for Ms. Mann, 19.44 for Mr. Kytle, 41.27 for Mr. Rose, and 15.06 for the paralegal. Citing Chuong Van Pham v. City of Seattle, 159 Wn.2d 527, 538, 151 P.3d 976 (2007), the trial court determined that 27.4 partner hours and 25.18 associate hours spent on Johnson's administrative claim were segregable and thus not recoverable. Citing Guerrero v. Cummings, 70 F.3d 1111, 1113 (9th Cir. 1995), the trial court found that the offer of judgment was not ambiguous and, therefore, the 59.76 partner hours, 5.85 associate hours, 4.08 paralegal hours, and $7,438.91 in costs expended or incurred after October 5, 2011 were not recoverable.

In addition, the trial court determined that 58.54 reconstructed partner hours and .15 reconstructed paralegal hours were not reliably proved and, thus, were not recoverable. The trial court expressed skepticism that counsel could reliably recall time spent more than 18 months prior to the submission, where no contemporaneous records of the work or the time spent were generated, as well as noting counsel's failure to explain why some correspondence hours were not accounted for when other correspondence hours had been included in the initial billing. However, the trial court applied a 1.3 multiplier to the lodestar figure based on the high risk plaintiff's counsel took in accepting the case, the difficulties presented by Johnson's mental health issues, and the sizeable resources available to DOT to defend the case.

On the issue of costs, the trial court found that all costs before October 5, 2011, except for Dr. Reisenauer's bills, were recoverable. The trial court determined that Dr. Reisenauer's bills should properly be considered medical damages, as he was Johnson's treating physician, and was neither retained nor listed as an expert witness. Therefore, based upon the court's findings, Johnson was awarded $119,448.20 in attorney fees and $12,034.38 in costs.[3] Johnson appealed from the trial court's determination of reasonable attorney fees and costs, asserting that the trial court erred in every instance in which it reduced the amount claimed by her.

---

[3] DOT has paid both the amount of the underlying judgment and all fees and costs awarded by the trial court. Additionally, DOT paid Dr. Reisenauer for his time at his deposition, and paid him a $234.34 fee for his prerelease editorial review of Johnson's medical records.

II

Johnson contends that she is entitled to recover attorney fees for time spent on her administrative claim because, she avers, the claims were nonsegregable. This is so, she contends, because the claims were based on a common core of facts and legal issues. Thus, Johnson asserts that the trial court erred by excluding time spent on the administrative claim from the recoverable hours.[4] We disagree.

This court will not disturb a trial court's decision denying, granting, or calculating an award of attorney fees absent an abuse of discretion. Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 283-84, 279 P.3d 943 (2012). "A trial court abuses its discretion if its order is manifestly unreasonable or is based on untenable grounds." Marina Condo. Homeowner's Ass'n v. Stratford at Marina, LLC, 161 Wn. App. 249, 263, 254 P.3d 827 (2011).

Under CR 68, "a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued." The terms of the offer control the extent to which attorney fees and costs may be awarded. Guerrero, 70 F.3d at 1114.[5] Here, the terms of the offer state that

_____

[4] DOT contends that this issue has been waived, because it was raised for the first time in a motion for reconsideration. As a factual matter, this is incorrect. Johnson's petition for attorney fees and costs argued that the administrative claim and tort claim were "based on the same core of facts and related or overlapping legal theories, and all were part of the basis for settlement." A reworded argument is not equivalent to a new argument. We therefore address the merits of Johnson's claim.

[5] Washington's CR 68 is virtually identical to Federal Rule of Civil Procedure 68. Lietz v. Hansen Law Offices, P.S.C., 166 Wn. App. 571, 580, 271 P.3d 899 (2012). Thus, in the absence of controlling state authority, Washington courts look to federal interpretations of the equivalent

DOT offered to pay Johnson's "awardable costs and reasonable attorney's fees accrued in this lawsuit up to the date/time of this Offer." Therefore, Johnson may recover all attorney fees and costs that are awardable in association with the underlying claim up to the date of the offer.

The WLAD allows for the recovery of "reasonable attorneys' fees" in connection with the suit. RCW 49.60.030(2). The party seeking fees has the burden of proving that which constitutes "reasonable fees." Mahler v. Szucs, 135 Wn.2d 398, 433-34, 957 P.2d 632, 966 P.2d 305 (1998), overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 658-59, 272 P.3d 802 (2012). In calculating the amount of reasonable attorney fees, a court using the "lodestar" method "must limit the lodestar to hours reasonably expended" on the successful claims. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983). Hours are "reasonably expended" if they are spent on claims "having a 'common core of facts and related legal theories.'" Chuong Van Pham, 159 Wn.2d at 538 (quoting Martinez v. City of Tacoma, 81 Wn. App. 228, 242-43, 914 P.2d 86 (1996)). "The court should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time." Chuong Van Pham, 159 Wn.2d at 538.

In this case, the trial court applied the "lodestar" method and determined that 27.4 partner hours and 25.18 associate hours were not recoverable because they were spent exclusively on Johnson's unsuccessful administrative claim.

---

rule. Lietz, 166 Wn. App. at 580; Hodge v. Dev. Servs. of Am., 65 Wn. App. 576, 580, 828 P.2d 1175 (1992).

Nevertheless, Johnson maintains that these hours were nonsegregable from her WLAD claim, as they involved a common core of facts and related theories. To the contrary, the trial court found that the hours were segregable, as they did not involve a common core of facts and legal theories. The trial court explained:

> Plaintiff's claims of gender and age discrimination, retaliation and negligence related to her treatment by her supervisor in the Northwest Region from June 2007 to August 2008. The accommodation claim, by contrast, focused on the Department's July 2009 decision by the Department's HQ unit, not plaintiff's supervisors.

The trial court did not abuse its discretion by excluding hours spent on Johnson's unsuccessful administrative claim from the amount of attorney fees awarded.[6]

III

Johnson contends that she is entitled to recover attorney fees for time spent on her claim after October 5, 2011. This is so, she asserts, both because public policy demands such an award and because the course of dealing between the parties establishes that such fees and costs were intended to be included in the offer of judgment. Thus, Johnson posits, the trial court erred when it excluded all time and costs incurred after October 5, 2011 from the amount awarded. We disagree.

A CR 68 offer operates as a contract, in that the terms of the offer control the extent to which attorney fees and costs may be awarded. Guerrero, 70 F.3d

---

[6] While Johnson cites to Steele v. Lundgren, 96 Wn. App. 773, 982 P.2d 619 (1999), as supporting her assertion that hours spent on her administrative claim are recoverable, Johnson provides no explanation as to why this is so, instead relying on a purely factual analysis. The trial court in that case found that the claims did involve a common core of facts and, as such, that decision does not assist Johnson here. Steele, 96 Wn. App. at 783.

at 1114. A waiver of attorney fees and costs must be unambiguous in order to be binding. Guerrero, 70 F.3d at 1113. Here, the offer stated that DOT would pay Johnson's "awardable costs and reasonable attorney's fees accrued in this lawsuit up to the date/time of this Offer." The trial court found that this language was unambiguous and, therefore, ruled that all fees and costs incurred after October 5, 2011 were not recoverable.

Johnson makes two contentions as to why the trial court erred by so ruling. First, Johnson asserts that the denial of attorney fees and costs incurred in the course of litigating an entitlement to fees violates public policy. Second, Johnson contends that the course of dealing between the parties establishes that DOT intended the offer to include fees and costs incurred in litigating the fee dispute, notwithstanding the language of the offer. These arguments are unavailing.

Johnson's first contention is that the denial of attorney fees and costs incurred while litigating an entitlement to fees violates the public policy behind the WLAD, which is to be liberally construed.[7] However, our Supreme Court has recognized that the WLAD's liberal construction is not without limits. Chuong Van Pham, 159 Wn.2d at 537. Johnson's contention was squarely addressed by the Ninth Circuit in Guerrero. As in this case, the plaintiffs in Guerrero accepted

---

[7] As a general rule, fees incurred while litigating an entitlement to fees are recoverable under remedial statutes such as the WLAD. See Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 378, 798 P.2d 799 (1990); Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir. 1986) ("Time spent defending entitlement to attorney's fees is properly compensable in a § 1988 fee award."); Copeland v. Marshall, 641 F.2d 880, 896 (D.C. Cir. 1980) ("[T]ime spent litigating the fee request is itself compensable" in Title VII fee awards.); see also Steele, 96 Wn. App. at 781.

a Rule 68 offer on their civil rights claims. 70 F.3d at 1112. Using language nearly identical to the language used in this case, the offer in Guerrero limited fees and costs to those "incurred by this plaintiff prior to the date of this offer." 70 F.3d at 1113. As Johnson does herein, the Guerreros contended that "disallowing post-offer fees undermines the attorney's fees policy in civil rights actions." Guerrero, 70 F.3d at 1113. This was so, the Guerreros asserted, because disallowing postoffer fees

> puts plaintiffs in an impossible predicament: either reject an offer of judgment which is reasonable as to the damages but leaves open the attorney's fees, and with the rejection risk the fee-shifting penalties in Rule 68, or accept the Rule 68 offer which cuts off further entitlement to fees no matter how difficult it is to resolve the amount of the pre-offer fee. They also suggest that forcing plaintiffs to litigate the reasonableness of fees, yet depriving them of fees on fees, dilutes the attorney's fees paid for work done on the underlying case.

Guerrero, 70 F.3d at 1113.

Nevertheless, the Ninth Circuit found that "the plain language of the settlement offers limits attorney's fees to those accrued prior to the date of the offers," and as such, "the district court did not err in finding that the Guerreros' acceptance clearly and unambiguously waived attorney's fees incurred thereafter." Guerrero, 70 F.3d at 1113. The court addressed the Guerreros' public policy arguments as follows:

> These arguments fail in light of the Supreme Court's opinion in Marek v. Chesny, 473 U.S. 1, 10-11, 105 S. Ct. 3012, 3017-18, 87 L. Ed. 2d 1 (1985). As the Court explained, "Merely subjecting civil rights plaintiffs to the settlement provision of Rule 68 does not curtail their access to the courts, or significantly deter them from bringing suit." Id. at 10, 105 S. Ct. at 3017. Moreover, while Rule 68 "will require plaintiffs to 'think very hard' about whether

continued litigation is worthwhile[,]" this effect of Rule 68 "is in no sense inconsistent with the congressional policies underlying § 1983 and § 1988." Id. at 11, 105 S. Ct. at 3017. Thus, there are no reasons of policy that preclude the cutting off of fees and costs at the point a Rule 68 offer is made and accepted.

Guerrero, 70 F.3d at 1113-14. We find this reasoning equally applicable to Johnson's claim.

Nevertheless, Johnson maintains that Lasswell v. City of Johnston City, 436 F.Supp.2d 974 (S.D. Ill. 2006), dictates a different result. To the contrary, in Lasswell, the Rule 68 offer provided for recovery of "costs then accrued." 436 F.Supp.2d at 981. The Lasswell court found that, unlike the offer in Guerrero, the phrase "costs then accrued" was ambiguous. 436 F.Supp.2d at 981. As Johnson's offer was not ambiguous, Lasswell does not apply here.

Johnson also asserts that restricting awardable fees to only those available under 42 U.S.C. § 1988 would render the WLAD superfluous. We disagree. The WLAD specifically provides that

[a]ny person deeming himself or herself injured by any act in violation of this chapter shall have a civil action . . . to recover the actual damages sustained by the person . . . together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).

RCW 49.60.030(2). The WLAD primarily differs from § 1983 in the scope of its protection.[8] Martini v. Boeing Co., 137 Wn.2d 357, 971 P.2d 45 (1999), cited by

---

[8] The WLAD includes under its protection numerous classes not fully protected by federal law: "families with children," "marital status," "sexual orientation," "honorably discharged veteran or military status," and "the use of a trained dog guide or service animal by a person with a disability." RCW 49.60.010.

Johnson, is inapposite. In Martini, our Supreme Court declined to limit the availability of back pay as a component of damages under the WLAD. Martini, 137 Wn.2d at 372-75. The court declined to apply Title VII case law because the remedy provisions in Title VII and the WLAD were "radically different." Martini, 137 Wn.2d at 375; see also Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 849, 292 P.3d 779 (2013) ("Where the WLAD provisions are 'radically different' from federal law, Washington courts must diverge from federal statutory interpretations."). Here, however, there is no radical difference between federal law and Washington law. Rather, "CR 68 is virtually identical to Federal Rule of Civil Procedure 68." Lietz v. Hansen Law Offices, P.S.C., 166 Wn. App. 571, 580, 271 P.3d 899 (2012). We have previously held that federal law is informative for construing CR 68 offers of judgment. Hodge v. Dev. Servs. of Am., 65 Wn. App. 576, 580, 828 P.2d 1175 (1992); see also Lietz, 166 Wn. App. at 580. Accordingly, there is no public policy reason to analyze the CR 68 offer made in this case differently than the offer made in Guerrero.

Johnson next maintains that extrinsic evidence establishes that DOT misled her by its prior course of dealing.[9] The trial court considered this argument and made a factual finding that DOT's "position is consistent with the representations defense [DOT] counsel made to plaintiff's [Johnson] counsel."

_____

[9] DOT contends that this argument has been waived, as Johnson raised it for the first time in a motion for reconsideration. As a factual matter, this is incorrect. In Johnson's supplemental authorities in support of her petition for attorney fees and costs, Johnson asserted that a course of dealing existed between the parties that established that the offer of judgment included fees incurred while litigating the fee award. Johnson also filed a supplemental declaration of Mary Ruth Mann, which made the exact argument that DOT now claims Johnson did not make until her motion for reconsideration. These two documents were filed on March 26, 2012, the same day that the trial court issued its letter ruling on fees and costs.

This finding is supported by the record. Rather than establishing a course of dealing that contemplated the inclusion of fees incurred after the date of the offer, the communications between the parties' counsel establish the exact opposite— that DOT did not intend for the offer of judgment to be construed in relation to offers in other cases. In an e-mail to Mann on October 17, 2011, counsel for DOT stated that, in regard to the issue of fees incurred during a fee dispute, "my position would be that, as in other litigation contexts, the American rule would apply and the parties would bear their own costs. *Please do not consider your statement regarding recoverable costs in a fee dispute as being a term of this settlement offer.*" (Emphasis added.) After Mann insisted that such fees were recoverable as a rule, counsel for DOT responded, "I am not willing to agree on behalf of my client to a 'rule' in this settlement offer. . . . The best that I can do at this time is rest on the plain language of the settlement offer and of the offer of judgment." As the record shows that DOT did not intend for fees incurred during a fee dispute to be part of the offer,[10] Johnson failed to establish that there was a contrary course of dealing that existed between the parties. The trial court did not abuse its discretion by so finding.[11]

Neither public policy nor a course of dealing theory support Johnson's

---

[10] Or, indeed, for any fees incurred after the date of the CR 68 offer to be recoverable.

[11] Moreover, Johnson's contention is not consistent with the remedy she seeks. If there was no agreement on the inclusion of fees expended while litigating fees, as Johnson contends, the result would be that no contract ever existed between the parties. The proper remedy in that instance is rescission. However, Johnson did not in the trial court and does not now seek rescission and remand for trial. Instead, she has accepted the benefits of the agreement—by accepting payments from DOT—while seeking to obtain additional fees beyond that provided for in the CR 68 offer. Johnson's attempt to unilaterally modify the offer of judgment has no basis in law.

contention that she should be awarded attorney fees and costs billed after October 5, 2011. The trial court did not err by determining that these fees were not recoverable.

IV

Johnson next contends that she is entitled to recover attorney fees for reconstructed hours submitted at the time of her petition. Thus, Johnson asserts, the trial court erred when it excluded 58.54 partner hours and .15 paralegal hours from the recoverable hours. We disagree.

The party seeking fees has the burden of proving that which constitutes reasonable fees. Mahler, 135 Wn.2d at 433-34. "Counsel must provide contemporaneous records documenting the hours worked." Mahler, 135 Wn.2d at 434. Although such records need not be exhaustive, any reconstructed hours "should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation." Frank Music Corp. v. Metro-Goldwin-Mayer Inc., 886 F.2d 1545, 1557 (9th Cir. 1989); accord Mahler, 135 Wn.2d at 434-35 ("Courts should not simply accept unquestioningly fee affidavits from counsel.").

In this case, the trial court applied the "lodestar" method and determined that 58.54 partner hours and .15 paralegal hours were not recoverable because the evidence of their validity was unreliable. In its numbered findings of fact, the trial court explained:

> 22. The court is skeptical that anyone can recollect how much time she spent on correspondence more than 18 months prior to the reconstruction of the time. This difficulty likely explains

- 15 -

why the same amount of time was assigned to all three letters –
assuming the second and third letters are not duplicative. Finally,
Plaintiff's counsel does not explain why many entries in her initial
billings contained contemporaneous records for correspondence,
and yet failed to account for time spent on other correspondence.

23. The court does not question Plaintiff's counsel's good
faith. However, it finds that the reconstructed time is wholly
unreliable. . . .

The trial court also noted that Johnson's counsel did not keep informal records of

the reconstructed hours. It is clear from the trial court's findings that Johnson did

not support her reconstructed hours with sufficient evidence and thus failed to

meet her burden to prove the reliability of the reconstructed hours that she

sought to be awarded. The trial court did not abuse its discretion by excluding

from its calculation of the lodestar amount hours that were not proved to its

satisfaction to have been worked.[12]

## V

Johnson's final contention is that she is entitled to be awarded sums to

compensate her for costs billed to her by her treating physician, Dr. Reisenauer.

Thus, Johnson asserts that the trial court erred when it excluded the amount of

Dr. Reisenauer's bills from the recoverable costs awarded. We disagree.

---

[12] Moreover, even if Johnson had met her burden of proof, the reconstructed hours may not have been recoverable under the terms of the offer of judgment. The offer of judgment stated, "Plaintiff's claimed costs and fees shall be substantiated by billing records attached to Plaintiff's acceptance of this Offer detailing the nature and date of the work performed and hours accrued." Johnson's reconstructed hours were not included in the billing statement she submitted to DOT at the time of her acceptance of the offer. (Indeed, they did not appear until she filed her petition for fees and costs with the court.) As the trial court found that Johnson failed to meet her burden of proof with respect to the reconstructed hours, it was not necessary for it to consider this argument. However, the argument provides a sufficient alternative basis to affirm the trial court's ruling.

In WLAD litigation, costs associated with expert witnesses are recoverable by the prevailing party.[13] RCW 49.60.030(2); Xieng v. Peoples Nat'l Bank of Wash., 120 Wn.2d 512, 528, 844 P.2d 389 (1993) ("Thus, as to employment discrimination claims brought under RCW 49.60.180(3) after the enactment of the amendment to § 2000e-5(k) [of the United States Civil Rights Act of 1964] on November 21, 1991, an award of expert witness fees is clearly authorized by RCW 49.60.030(2)."). However, Dr. Reisenauer was not an expert witness. Rather, Johnson contends that "time of medical providers spent responding to legal matters" is recoverable as a litigation cost. Johnson relies on CR 26(b)(7) and RCW 49.60.030 for this contention. Neither the court rule nor the statute support Johnson's assertion.[14]

DOT contends, and the trial court held, that Dr. Reisenauer's costs are medical damages, and thus are covered as part of the $350,000 awarded under the offer of judgment. We disagree. Damages are amounts incurred by the plaintiff as a result of the claimed injury. Dr. Reisenauer's bills are for nonclinical hours, which would not have been incurred in the absence of a lawsuit. Therefore, it is incorrect to characterize Dr. Reisenauer's billed hours as medical

---

[13] RCW 49.60.030(2) reads, "Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action . . . to recover the actual damages sustained by the person . . . together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.)."

[14] CR 26(b)(7) reads, "The party seeking discovery from a treating health care provider shall pay a reasonable fee for the reasonable time spent in responding to the discovery." This statute provides for the recovery of fees by physicians for responding to discovery; it does not extend to fact-witnesses preparing for trial. DOT claims it paid for Dr. Reisenauer's deposition; Johnson does not dispute this. Dr. Reisenauer's billing statements indicate similarly. To the extent DOT sought discovery from Dr. Reisenauer related to the administrative proceeding, such amounts would not be compensable in this action for the reasons stated.

damages. Dr. Reisenauer's billed hours are of the type typically billed by an expert witness. Johnson's assertion, then, presents a broader question of public policy: given the current nature of the medical profession, should the time of fact witness physicians who are not retained as expert witnesses be compensable, pursuant to this cost-shifting statute, as a litigation cost?

Traditionally, under Washington law, lay witness costs are limited to travel expenses and compensation for time spent testifying. RCW 2.40.010. However, Johnson seeks neither of these costs herein. Rather, Johnson requests that her treating physician, a fact witness, be compensated for time spent "responding to legal matters."

Reimbursement to lay witnesses for time spent "responding to legal matters" is an issue not widely addressed. The Michigan Court of Appeals recently addressed the question in Van Elslander v. Thomas Sebold & Assocs., Inc., 297 Mich. App. 204, 823 N.W.2d 843 (2012). There, the trial court awarded Van Elslander the costs attributed to two witnesses who were never identified as experts.[15] Van Elslander, 297 Mich. App. at 217. On appeal, the court held that the trial court had abused its discretion in awarding those costs to Van Elslander, as no statutory basis existed for awarding fees to a fact witness. Van Elslander, 297 Mich. App. at 217-18. Moreover, the court found that time spent on "'conferences with counsel for purposes such as educating counsel about expert appraisals, strategy sessions, and critical assessment of the opposing party's

---

[15] The nature of the case suggests that these witnesses were employed in the home construction industry.

position'" would not be recoverable even in the instance of an expert witness. Van Elslander, 297 Mich. App. at 220 (internal quotation marks omitted) (quoting Hartland Twp. v. Kucykowicz, 189 Mich. App. 591, 599, 474 N.W.2d 306 (1991)). Thus, under Michigan law, costs for a fact witness's time spent "responding to legal matters" are not recoverable.

In addition, the Kansas Court of Appeals, specifically addressing physicians, held that treating physicians who are not retained as expert witnesses are not to be treated differently from other lay witnesses for purposes of assessing costs. In Grant v. Chappell, 22 Kan. App. 2d 398, 916 P.2d 723 (1996), the plaintiff sought costs for a treating physician's appearance in court, in an amount well above the statutory allowance, arguing that the statute did not apply to treating physicians. Grant, 22 Kan. App. 2d at 400. The court rejected this argument, holding that "the fees treating physicians charge for their appearance and testimony at trial may not be assessed against a losing party as costs." Grant, 22 Kan. App. 2d at 400. The logical extension of this holding is that other fees charged by treating physicians also may not be assessed as costs. Thus, Kansas courts would also not be willing to award costs for a fact witness's time spent "responding to legal matters."

Under federal law, costs for fact witnesses are limited by 28 U.S.C. § 1821. As with RCW 2.40.010, § 1821 contemplates costs for fact witnesses only in connection with their testimony. 28 U.S.C. § 1821 ($40 per day attendance fee, travel costs, and subsistence costs for overnight stays awardable). Nevertheless, there is a split among the district courts as to whether treating

- 19 -

physicians should be entitled to fees beyond those authorized by § 1821. See generally Baker v. John Morrell & Co., 263 F.Supp.2d 1161, 1206 (N.D. Iowa 2003) (discussing split in authority); Demar v. United States, 199 F.R.D. 617, 618-19 (N.D. Ill. 2001) (discussing split in authority). Those courts holding that treating physicians are entitled to fees beyond those authorized by § 1821 do so on the basis that physicians provide an invaluable service to the community and incur substantial overhead costs even while testifying. See Coleman v. Dydula, 190 F.R.D. 320, 323-24 (W.D.N.Y. 1999); Haslett v. Tex. Indus., Inc., No. Civ.A. 397-CV-2901D, 1999 WL 354227 at *2 (N.D. Tex. 1999); see also Baker, 263 F.Supp.2d at 1206-07 (concurring with Haslett in dicta). Other courts hold that treating physicians are no different from other fact witnesses, and thus no exception to § 1821 is warranted. See Demar, 199 F.R.D. at 619-20; Fisher v. Ford Motor Co., 178 F.R.D. 195, 198-99 (N.D. Ohio 1998). However, one important factor distinguishes these cases from the case at hand: in the cases awarding additional costs for treating physicians, the costs were incurred for time spent testifying. See Coleman, 190 F.R.D. at 320 (costs for deposition testimony); Haslett., 1999 WL 354227 at *2 (costs for trial and deposition testimony).[16] CR 26(b)(7) already addresses compensable costs for treating physicians for time spent testifying. The fees billed by Dr. Reisenauer, however, were not incurred for time spent testifying. No case authority directly supports the request that Johnson makes herein.

---

[16] The physicians in Baker were designated by the plaintiff as expert witnesses. 263 F.Supp.2d at 1205. Accordingly, the case is inapposite.

Although no case in Washington is directly on point, one case is particularly informative. In Paiya v. Durham Construction Co., 69 Wn. App. 578, 579, 849 P.2d 660 (1993), the plaintiff's treating physician demanded that he be paid for his deposition at the expert rate of $300 per hour. We refused to grant the physician's request, holding that "[p]rofessionals who acquire or develop facts not in anticipation of litigation are not entitled to expert witness fees." Paiya, 69 Wn. App. at 579-80. In so holding, we differentiated between professionals who are experts in their field and witnesses who are experts for purposes of litigation, recognizing that the mere fact of expertise does not automatically warrant a professional's treatment as an expert witness. Paiya, 69 Wn. App. at 580. The Paiya decision militates against Johnson's present assertion.

In the Demar decision, the court articulates why we would be remiss in departing from our decision in Paiya:

> While physicians certainly have significant overhead costs and a special expertise, so do a myriad of other professions. For instance, should fact witnesses who happen to be engineers, attorneys, accountants or consultants—professions also with special expertise and significant overhead costs—similarly be allowed more than the statutory fee prescribed by § 1821? If the answer is in the affirmative, then does § 1821 merely apply to less prestigious professions?

199 F.R.D. at 619. We decline to hold that time spent by a fact-witness treating physician "responding to legal matters" is recoverable as a WLAD litigation cost. Johnson has not established an entitlement to appellate relief on this issue.

- 21 -

No. 69046-9-I/22

Affirmed.

Dwyer, J.

We concur:

Appelwick, J.

Grosse, J.