IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| C&C COMMUNICATIONS, LLC, | No. 86334-7-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| T-MOBILE USA, INC. d/b/a T-MOBILE, and SPRINT SOLUTIONS, INC. n/d/b/a T-MOBILE, | |
| Respondents. | |

CHUNG, J. — C&C Communications (C&C) sold wireless services and other products as a retailer in the Sprint Solutions, Inc. (Sprint) network. After T-Mobile USA, Inc. (T-Mobile) acquired Sprint in April 2020, C&C filed suit alleging a host of claims regarding the merger, which were resolved through arbitration. The arbitrator ruled in T-Mobile's favor on all claims and awarded it attorney fees and costs. The superior court confirmed the award. In this appeal, C&C challenges solely the award to T-Mobile of nearly $3 million for attorney fees and costs. It claims the arbitrator exceeded his authority first, by allowing T-Mobile to file supplemental documentation supporting its fee petition, and then, despite insufficient documentation, by granting the petition with only a $5,000 reduction. We disagree and affirm.

FACTS

C&C sold wireless services, phones, and accessories as a dealer in the Sprint network throughout Washington and several other states. C&C's operations were absorbed by T-Mobile when T-Mobile acquired Sprint in April of 2020. The merger was announced in April 2018 and prompted a lengthy regulatory process.

In preparing for the merger, T-Mobile acknowledged "the fact that post-merger the new entity would have more stores than it would need to serve the customer base," projecting a post-merger increase in nearly 4,000 stores. T-Mobile's post-merger "retail distribution strategy" considered various iterations of when and how it would close the excess stores, but due to "regulatory and anti-trust" limitations on their communications, T-Mobile was unable to fully determine its approach until after the close of the merger.

In April 2020, T-Mobile met once with C&C and other legacy Sprint dealers and once with C&C only to discuss its plans for integration. On May 13, 2020, C&C and T-Mobile executed a Retailer Services Agreement (RSA). Later in 2020, T-Mobile made its first round of closures, leaving C&C with 60 stores. In November 2020, T-Mobile announced its second round of store closures, including C&C stores. In July 2021, C&C closed a sale of its assets to another wireless dealer, MobileOne.

On January 14, 2022, C&C filed an action against T-Mobile in King County Superior Court seeking nearly $25 million in damages for claims including fraud, and fraudulent inducement, negligent misrepresentation, declaratory relief,

2

breach of contract, breach of covenant of good faith and fair dealing, violation of the Washington Consumer Protection Act (CPA), ch. 19.86 RCW, violation of the Washington Franchise Investment Protection Act (FIPA), ch. 19.100 RCW, civil conspiracy, and unjust enrichment. The parties agreed to proceed with arbitration, and retired Judge Ronald E. Cox (Arbitrator) was appointed as arbitrator.

Several other former Sprint dealers filed similar actions against T-Mobile, alleging that it had misled them regarding the merger with Sprint. In the first of these to be decided, an arbitration filed by Wireless World, the arbitrator issued an award against T-Mobile.

C&C's arbitration proceeded after the Wireless World arbitration had concluded. On August 21, 2023, the Arbitrator entered an "Interim Award" dismissing all claims against T-Mobile "on either insufficient evidence, contractual limitations periods, or both." Regarding attorney fees, the Arbitrator noted that under the RSA, whether T-Mobile was the prevailing party depended on the settlement offers made during the proceeding; however, he did not know these amounts, and "[t]he same applies to any costs." Therefore, he requested T-Mobile to submit "a specification, with supporting documentation, of the amount of attorney fees and costs it seeks," and included a schedule for the related submissions. Accordingly, T-Mobile submitted a fee petition, along with a declaration from its attorney in support, seeking $2,867,271.47 for attorney fees, expert fees, and other costs. As to attorney fees, the initial petition included a table organized by timekeeper, listing each's title, rate, total hours worked, and

3

total fees. As to costs, the initial fee petition included the cost category, the amount for that category, and the total. Finally, as to expert fees, the initial petition included the billing period, the invoice amount, and the total.

C&C filed an opposition to the petition, raising multiple objections, including that T-Mobile did not comply with the standard set forth by the Arbitrator and failed to include the necessary information for a complete analysis because it did not support its requested rates or its total hours. T-Mobile filed a reply, and the parties also exchanged letters on the topic. By e-mail, the Arbitrator advised the parties, "I am unable to properly decide the question of attorney fees on the existing record." The Arbitrator explained, "the record does not reflect contemporaneous records of hours worked, the nature of the work, and the applicable rates of timekeepers." The Arbitrator invited a conference among the parties. C&C's counsel replied, objecting to the Arbitrator's consideration of any further submissions.

T-Mobile subsequently filed a supplemental declaration attaching additional contemporaneous time records, organized by the various law firms that worked on the matter. Unlike the initial petition, these records were organized by transaction date, and for each transaction, included the timekeeper's name, position, rate, hours billed, and billed amount, as well as a description of the billed tasks. However, T-Mobile explained that it had provided only a generalized description of the tasks and removed the narrative descriptions based on attorney-client privilege, though it offered to provide the full narrative descriptions for in camera review if necessary.

4

On November 22, 2023, the Arbitrator issued a final award ruling in T-Mobile's favor on all claims. The Arbitrator entered factual findings in support of its decision on each claim. As to attorney fees and costs, the Arbitrator described the process he followed and his analysis of the parties' submissions. The Arbitrator specifically addressed C&C's objections to T-Mobile's fee petition. The Arbitrator explained that "discretion is reasonably exercised when the choice is within the range of reasonable choices," and, faced with incomplete evidence, the range of choices included both seeking additional evidence and excluding it. Also, the Arbitrator stated that he was not persuaded by C&C's argument that T-Mobile's supplement constituted block billing, finding instead that the records were reasonable because they allowed him to "evaluate when work was done, by whom, the rate charged, the general nature of the work, and the incremental billing to the client. This is sufficient under the governing rule." The Arbitrator made some reductions to T-Mobile's fee petition for "entries showing internal discussions among attorneys regarding strategy," explaining that "the number of attorneys involved in such discussions is too great." The Arbitrator awarded T-Mobile $2,865,276.70 in attorney fees and costs.

On December 1, 2023, T-Mobile filed a motion in King County Superior Court to confirm the arbitration award. In response, C&C filed an opposition to T-Mobile's motion and a counter-motion to vacate the arbitration award, challenging the award on multiple grounds.[1] C&C also moved for a stay pending

---

[1] Specifically, C&C challenged the award for fees and costs; the exclusion of expert evidence of franchise fees and evidence of deception; the arbitrator's alleged disregard of the law concerning the CPA and franchise claims; and faulty arbitrator disclosures.

a decision on appeal in another case involving similar claims against T-Mobile by Wireless World. On January 19, 2024, the trial court denied C&C's motion to stay and C&C's petition to vacate the arbitration award and confirmed the final arbitration award. C&C timely appeals.

DISCUSSION

C&C limits its appeal to the trial court's order confirming the arbitration award of fees and costs to T-Mobile. C&C argues that (1) the Arbitrator manifestly disregarded the law by permitting T-Mobile to supplement its fee petition contrary to the parties' agreed terms and Washington law; and (2) the Arbitrator manifestly disregarded Washington law by effectively allowing block billing and by not reducing T-Mobile's award to reflect its deficient records.

Judicial review of an arbitration award is "limited to the same standard applicable in the court which confirmed, vacated, modified or corrected that award." Salewski v. Pilchuck Veterinary Hosp., Inc., P.S., 189 Wn. App. 898, 903, 359 P.3d 884 (2015). Therefore, on appeal, courts are limited " 'to the question of whether any of the statutory grounds for vacation exist.' " Id. at 903-04 (quoting Cummings v. Budget Tank Removal & Envtl. Servs., LLC, 163 Wn. App. 379, 388, 260 P.3d 220 (2011)). The challenging party has the burden of demonstrating that one of the statutory grounds exist. Id. at 904.

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, agreements to arbitrate are enforced according to their terms. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682, 130 S. Ct. 1758, 176 L. Ed. 2d 605

(2010). Specifically, 9 U.S.C. § 10(a) sets out when a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

We must confirm the arbitration award unless it is vacated, modified, or corrected under one of the § 10(a) grounds. Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 583, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).

Demonstrating that an arbitrator exceeded their power is a heavy burden. State v. Am. Tobacco Co., 28 Wn. App. 2d 452, 479, 537 P.3d 303 (2023). This is so because the parties in arbitration settle on the construction of the agreement, so decisions that flow from it " 'must stand, regardless of a court's view of its (de)merits.' " Id. (quoting Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013)). It is insufficient for the party seeking vacatur " 'to show that the [arbitrator] committed an error – or even a serious error.' " Id. (quoting Stolt-Nielsen S.A., 559 U.S. at 671). Nevertheless, "when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] [their] own brand of industrial justice' [] [their] decision may be unenforceable." Stolt-Nielsen S.A., 559 at 671 (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed.

7

2d 740 (2001)). The record must clearly indicate that " 'the arbitrator[] recognized the applicable law and then ignored it.' " Am. Tobacco, 28 Wn. App. 2d at 480 (internal quotations omitted) (quoting Biller v. Toyota Motor Corp., 668 F.3d 655, 665 (9th Cir. 2012)). "If a reviewing court concludes that the arbitrator exceeded their authority, they have discretion over whether to vacate the award." Id. (citing 9 U.S.C. § 10(a)) (noting the statute uses "may" language).[2]

C&C argues that the arbitration award should be vacated based on 9 U.S.C. § 10(a)(4), because the Arbitrator exceeded his powers.[3] Specifically, C&C argues that the Arbitrator manifestly disregarded the law by permitting T-Mobile to supplement its fee petition and by accepting T-Mobile's flawed fee records and insufficiently reducing the award.

## I. Arbitrator Authority to Allow Supplementation

C&C claims the Arbitrator exceeded its authority by allowing T-Mobile to "file a replacement fee petition" or a "do-over," contrary to the parties' agreed procedure. Further, it asserts that the Arbitrator manifestly disregarded the law and "effectively took sides by saving T-Mobile from its own arguments that it need not submit additional documentation." These arguments are unavailing.

In general, an arbitrator's powers are derived from the parties' agreement to arbitrate. Barnett v. Hicks, 119 Wn.2d 151, 155, 829 P.2d 1087 (1992). An

---

[2] The test for whether an arbitrator exceeded their power is similar under both Washington and federal law. Am. Tobacco, 28 Wn. App. 2d at 480. The FAA standard is stricter than the Washington standard, which requires error "on the face of the award." Id. Here, C&C states, and T-Mobile does not contest, that the FAA governed the parties' arbitration agreement.

[3] Although C&C's briefing references "undue means," 9. U.S.C. § 10(a)(1), at oral argument it confirmed its arguments were limited to § 10(a)(4). Wash. Court of Appeals oral argument, C&C Communication, LLC V. T-Mobile USA, Inc., No. 86334-7-I (Nov. 8,2024), at 7 min., 50 sec. to 8 min., 07 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024111137/?eventID=2024111137.

arbitrator cannot disregard the "plain text of a contract . . . simply to reach a result he believes is just." Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC, 913 F.3d 1162, 1169 (9th Cir. 2019). For example, in Aspic Engineering, the court held that the arbitrator's decision that the plaintiffs did not need to comply with regulations incorporated into the parties' contract was a breach of his authority because he " 'fail[ed] to draw its essence from the agreement,' " in direct conflict with their contract. Id. at 1166 (quoting Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1288 (9th Cir. 2009)). The court explained that an award demonstrating such manifest disregard of the law is suggestive that the arbitrator exceeded their powers for the purposes of 9 U.S.C. § 10(a)(4) vacatur. Id. at 1166.

Here, it is undisputed that the parties' RSA is the underlying contract that establishes the arbitrator's authority. The RSA incorporates the Judicial Arbitration and Mediation Services (JAMS) Comprehensive Rules and Procedures. In turn, JAMS Rule 2(a) requires that the arbitrator follow "[p]arty-agreed procedures." JAMS Comprehensive Rule 2(a), available at https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-2.

The RSA states that "if the arbitrator awards [monetary] relief, the prevailing party will be entitled to recover its reasonable attorney's fees and costs." And regarding arbitration awards generally, the RSA provides that "[t]he award of the arbitrator will be in writing stating the reasons for the arbitrator's ruling, with one counterpart delivered to each party. An arbitrator may not award relief in excess of or inconsistent with the provisions of this [a]greement." But

nothing in the RSA or the JAMS Rules specifically sets out a procedure or otherwise circumscribes the Arbitrator's ability to request and consider supplemental information relating to an award, either generally or relating to an award of fees and costs. To the contrary, JAMS Rule 24(c) vests arbitrators with authority to use the law that they "deem[] to be most appropriate."

Nevertheless, C&C suggests that the Arbitrator was bound by the Interim Award because it established "party-agreed procedures" pursuant to JAMS Rule 2(a), pointing to this language:

> Within 14 days from the date of filing of this interim award, Respondents shall submit a specification, with supporting documentation, of the amount of attorney fees and costs that it seeks. Within 7 days of filing of this specification, C&C shall file its response to the specification. Within 3 days of the response, Respondents may file a reply.

The Interim Award was dated August 21, 2023. The parties subsequently agreed to extend these deadlines. T-Mobile submitted its "specification" and documentation on September 12, and C&C filed a response opposing the petition on September 25. On October 2, the Arbitrator sent a message to the parties informing them that he was "unable to properly decide the question of attorney fees on the existing record." He set a meeting for October 13 to discuss his questions about T-Mobile's fee petition with both parties. On October 12, ahead of their scheduled conference, T-Mobile filed a supplemental fee petition attaching contemporaneous time records for all the timekeepers from all the law firms that worked on the matter. These records were organized by transaction date, and for each transaction, included the timekeeper's name, position, rate, hours billed, and billed amount, as well as a description of the billed tasks.

C&C filed letters opposing T-Mobile's supplemental fee petition on October 13, 17 and 21, and again on November 3. The Arbitrator rejected C&C's objections, including, specifically, C&C's argument that he lacked discretion to seek additional evidence on fees and costs.

C&C contends again on appeal that because the parties agreed on the extended deadlines, the Arbitrator exceeded his authority by giving T-Mobile a "do-over," thus "sav[ing] T-Mobile from its own arguments in the briefing that it need not submit contemporaneous billing records," and "introduc[ing] [an] argument that T-Mobile was not making." C&C's argument is unavailing.

As a procedural matter, arbitrators have broad discretion to allow supplementation while the proceedings are still pending, so long as it is within "the range of acceptable choices." In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997) (explaining that a court abuses its discretion when its decision is manifestly unreasonable because it is "outside the range of acceptable choices"). Given this discretion, a reviewing court may remand to the trial court to develop the record so that it has sufficient information to review a fee award. 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 741, 281 P.3d 693 (2012). As the Arbitrator explained, "Here, when faced with incomplete evidence on a core issue in the case, the range of choices included both seeking additional evidence and excluding it," and, therefore, "it was not unreasonable to seek the additional evidence." We agree.

We conclude that by requesting that T-Mobile provide supplemental documentation of contemporaneous billing records to support its petition for fees

and costs, the Arbitrator neither exceeded his authority under the RSA or other party-agreed procedures, nor did it manifestly disregard the law in any other respect.

    II.    <u>Attorney Fee Award</u>

Next, C&C contends that the Arbitrator manifestly disregarded the law by determining that T-Mobile provided sufficient documentation to support its award of attorney fees and costs. Alternatively, C&C argues by failing to reduce T-Mobile's fee award based on the documentation, the Arbitrator manifestly disregarded the law.

To establish manifest disregard of the law, the record must clearly indicate that the Arbitrator recognized the applicable law and then ignored it. <u>Am. Tobacco</u>, 28 Wn. App. 2d at 480. As noted above, JAMS Rule 24(c) states that arbitrators "shall be guided by the rules of law and equity that he or she deems to be most appropriate." Here, the Arbitrator stated, "[M]y determinations of the amounts of attorney fees and costs to award are governed by the substantive law of the state of Washington," and cited to a law review article that "extensively discuss[ed] the lodestar method."[4] Acknowledging that the parties "were free to either apply or disregard the principles discussed in that law review," the Arbitrator then stated that he "applied the principles discussed in that law review to my determinations of the proper awards of both attorney fees and costs in this case."

---

[4] Philip A. Talmadge & Thomas M. Fitzpatrick, <u>The Lodestar Method for Calculating a Reasonable Attorney Fee in Washington</u>, 52 Gonz. L. Rev. 1 (2016/17).

The Arbitrator specifically quoted the article's description of the lodestar methodology for determining what is a reasonable fee:

> The lodestar fee methodology involves the multiplication of reasonable hourly rates times the reasonable hours necessary to secure a successful result for the client. (citations omitted) The central feature of the method is the requirement for parties and courts alike to utilize a demonstrable method for calculating a fee. (citations omitted) Ultimately, a reasonable fee involves the time it should take a competent practitioner to perform the necessary work upon which the client's successful result is predicated. (citations omitted).

Further, the Arbitrator quoted the article's description of other aspects of Washington law on attorney fees, including the burden of proof, whose hours were compensable, and appropriate documentation:

> The lodestar formula requires the party seeking fees to establish reasonable hourly rates for the professional services rendered. A court may award the reasonable hours of various counsel, as well as paralegals. (internal citations omitted) The party seeking a fee award has the burden of proving that its request is reasonable. Further, the party must provide documentation that shows the time spent by various attorneys on the cases, while also giving an appellate court a basis upon which it can review the trial court's decision. Consistent with the requirements of appropriate documentation of a party's fee request, that party's attorney must keep specific time records of fees incurred.

The article, in turn, cites to Washington cases in support.[5]

We agree with C&C that the Arbitrator's specific statements and references to the law review article demonstrate he recognized the applicable law. The remaining question before us, then, is whether the Arbitrator manifestly disregarded Washington case law on attorney fees in awarding fees to T-Mobile. We conclude that he did not.

---

[5] Talmadge & Fitzpatrick, supra note 4, at 3 nn.4-6, 6 n.30, 9 nn.48-49, 4 n.16, 5 nn.17, 19.

A.  Alleged Insufficient Detail in Records

C&C identifies two ways in which it claims that T-Mobile's supplemental billing records failed to provide the arbitrator with a sufficient basis for its decision. First, C&C argues that T-Mobile's supplemented billing records constituted block billing and were deficient to support the fee award. Second, C&C contends that the Arbitrator should have disallowed T-Mobile's asserted claim to attorney-client privilege because it was a veiled way to avoid submitting actual billing records.

Timekeeping documentation should be contemporaneous, and any reconstructed timekeeping will be considered when it is reasonable and duly supported by other evidence. Johnson v. Dep't of Transp., 177 Wn. App. 684, 699, 313 P.3d 1197 (2013). "Block billing" is the " 'group[ing] together [of] multiple tasks without specifying how much time each task took.' " Nat'l Lab. Rels. Bd. v. Bannum, Inc., 102 F.4th 358, 364 (6th Cir. 2024) (quoting Miller v. Caudill, 936 F.3d 442, 452 (6th Cir. 2019)); see also Tridico v. D.C., 235 F. Supp. 3d 100, 109 (D.D.C. 2017) (explaining that block billing occurs when multiple tasks are categorized into a single entry, which can make it difficult to evaluate reasonableness, resulting in reduced awards).

C&C analogizes to Westlake, where this court held that the plaintiff's documentation of timekeepers was not sufficiently detailed to permit the defendant to "critiqu[e] the request in a meaningful way." 169 Wn. App. at 740. C&C suggests that T-Mobile's timekeeping entries were likewise deficient because they were overly repetitious of each other and "cookie cutter."

But our inquiry here on review of an arbitration award is whether, despite understanding the applicable law, the Arbitrator ignored it.[6] The record indicates that the Arbitrator made an "independent judgment about how much time [was] reasonably spent" on a task and considered that an "attorney's reasonable hourly rate encompasses the attorney's efficiency." Berryman v. Metcalf, 177 Wn. App. 644, 664, 312 P.3d 745 (2013). For example, the Arbitrator noted that the main dispute was whether the hours expended by T-Mobile were reasonable and concluded, "I am satisfied that the record before me supports the vast majority of the hours expended in defense of this case." C&C cites to no Washington authority that expressly prohibits "block billing" descriptions.[7] To the contrary, Washington law does not require a party submitting a fee petition to submit "exhaustive or [] minute detail" but rather sufficient information to inform the arbitrator of the bases for the award, such as type of work, hours worked, and category of attorney who performed work. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983). T-Mobile's entries include this information, as they describe the category of attorney performing the work, a description of the work, and hours.

---

[6] By contrast, when a trial court makes a fee award, the reasonableness of an attorney fee award is subject to review for abuse of discretion. 224 Westlake, 169 Wn. App. at 734.

[7] This court has stated that "block billing entries tend to be obscure" and may make a court's evaluation for fee awards onerous. Berryman, 177 Wn. App. at 663-64. But we recently reaffirmed that a trial court has discretion to make this determination of what information is necessary for it to determine what fees are reasonable. Bickford Landing LLC v. Trinity Contractors, Inc., No. 85162-4-I, slip op. at 5 (Wash. Ct. App. Nov. 13, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/851624.pdf. In Bickford, the court held that the trial court did not abuse its discretion in refusing to reduce the award because the plaintiff had failed to "point to any particular billing entry as being obscure, impossible to segregate, or otherwise problematic," and did not cite to authority that indicated the defendant's method of billing was prohibited. Bickford, No. 85162-4-I at 4. Under GR 14.1(c), we may cite to unpublished decisions as necessary for a reasoning opinion, as is the case here.

The reviewing officer "who has watched the case unfold . . . is in the best position to determine which hours should be included in the lodestar calculation." Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 540, 151 P.3d 976 (2007) (holding the trial court did not abuse its discretion in calculating attorney fees where the law provides the trial court with significant deference given its proximity to the case). Here, as the Arbitrator described in the final award, he was appointed as arbitrator in this case in May 2022. He conducted a preliminary hearing and entered a scheduling order in June 2022. Over a year later, the Arbitrator presided over 5 days of evidentiary hearings, in which he heard testimony by 13 witnesses and reviewed multiple exhibits. The Arbitrator was familiar with the legal resources expended, and referenced the counsel's competence and professionalism, the parties' extensive discovery preparing for the hearing, and T-Mobile's use of multiple law firms "with efficiencies in mind." Therefore, the Arbitrator was in the best position to determine that T-Mobile's billing records supported the hours expended as stated in its fee petition. The Arbitrator did not ignore the relevant law regarding reasonableness of a fee petition, but applied it. C&C cannot show that the Arbitrator acted outside his authority by making this determination based on the records provided.

Second, C&C contends that the Arbitrator should have disallowed T-Mobile's asserted claim to attorney-client privilege, because doing so allowed T-Mobile to avoid submitting actual billing records. T-Mobile explained it believed that more detailed descriptions were privileged and might reveal strategy related to ongoing arbitrations.

C&C again relies on Westlake, in which we explained that a claim of privileged information does not alleviate a party from submitting billing records because it "could have been redacted or a more detailed summary could have been prepared." 169 Wn. App. at 740. Here, C&C claims that the Arbitrator manifestly disregarded the law by ignoring Westlake and approving T-Mobile's edits to time entries to protect attorney-client privilege, thus, further denying C&C the ability to meaningfully critique T-Mobile's entries.

However, Westlake explicitly states that parties can both honor attorney-client privilege and comply with billing disclosures by redacting the billing information. 169 Wn. App. at 740. This is exactly what T-Mobile did in its supplemental documentation. Therefore, the Arbitrator did not manifestly disregard the law when the law allowed T-Mobile to make redactions on the basis of attorney-client privilege.

We conclude that the Arbitrator did not manifestly disregard the law by relying on T-Mobile's supplemental timekeeping records to determine the reasonableness of the requested attorney fees or by allowing T-Mobile to redact its entries based on attorney-client privilege.

B. Insufficient Reduction of Award

C&C argues that the Arbitrator manifestly disregarded Washington law because it did not reduce T-Mobile's fee award to reflect its deficient billing records. We disagree.

"A determination of reasonable attorney fees begins with a calculation of the " 'lodestar,' " which is the number of hours reasonably expended on the

17

litigation multiplied by a reasonable hourly rate." Berryman, 177 Wn. App. at 660 (quoting Mahler v. Szucs, 135 Wn.2d 398, 433-34, 957 P.2d 632 (1998)). An arbitrator has discretion to reduce fee awards. See, e.g., Clausen v. Icicle Seafoods, Inc., 174 Wn.2d 70, 82, 272 P.3d 827 (2012) (trial court was in the best position to reduce attorney fees and costs and did not abuse its discretion in doing so).

C&C notes that courts "must take an active role in assessing the reasonableness of fee awards" and should not " 'unquestioningly [accept] fee affidavits from counsel.' " Id. at 657 (quoting Mahler, 135 Wn.2d at 434-35).[8] C&C argues that the Arbitrator manifestly disregarded this law when he granted T-Mobile's fee petition and made only a $5,000 reduction. C&C cites to several cases from federal courts in other jurisdictions as examples of fee reductions for block billing, imprecise timekeeping, or reconstructed entries that failed to include necessary information.[9] In response, T-Mobile contends there is no Washington law that required the Arbitrator to make any amount of fee reductions, so the Arbitrator could not have manifestly disregarded law that does not exist.

The record here is distinguishable from that in Berryman. There, the appellate court explained that it could not glean from the trial court's findings whether it had actually weighed reasonableness because there was no

___

[8] Appellant cites Chief Justice Burger's concurrence in Hensley v. Eckerhart, which states that "the lawyer must provide detailed records of the time and services for which fees are sought. . . . A [d]istrict [j]udge may not, in my view, authorize the payment of attorney's fees unless the attorney involved has established by clear and convincing evidence the time and effort claimed and shown that the time expended was necessary to achieve the results obtained." 461 U.S. 424, 440-41, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (Burger, C.J., concurring).

[9] Perry v. AutoZone Stores, Inc., 624 F. App'x 370, 373 (6th Cir. 2015) (unpublished) (block billing); Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995) (imprecise timekeeping); In re Hudson & M. R. Co., 339 F.2d 114, 115 (2d Cir. 1964) (reconstructed entries).

evaluation of the opposing party's objections. 177 Wn. App. at 658. Here, by contrast, the Arbitrator's final award order included over ten pages of analysis specifically addressing attorney fees and costs, including written findings that addressed C&C's objections as to the reasonableness of fees and its requests for reductions. First, the Arbitrator stated it was "necessary to provide context for my decisions on the award of fees and costs" and discussed the complexity of the proceedings, noting that "there was extensive discovery preceding the five-day evidentiary hearing" and that T-Mobile had hired three law firms, "each with efficiencies in mind." The Arbitrator then found that the timekeepers' hourly rates were reasonable, noting that these rates were negotiated with the clients and in some respects were discounted rates and represented "allocation of types of work to different timekeepers." As to whether the hours expended were reasonable, the Arbitrator also made specific findings:

> I find that the reasonable hours expended total the amount requested less a total of [$5,000]. My explanation of this finding follows.

> After carefully reviewing the extensive records provided to me, I find that [T-Mobile] [has] satisfied their duty to provide contemporaneous billing records to support their request. Although C&C disputes this characterization, I reject its arguments.

> What I have here are contemporaneous records, edited to reflect concerns about attorney client privilege. That is not unreasonable. The records, nevertheless, allow me (and C&C) to evaluate when work was done, by whom, the rate charged, the general nature of the work, and the incremental billing to the client. This is sufficient under the governing rule.

> I do note, however, that there are a number of entries relating to a summary (disposition) in this proceeding that was never filed. I denied the request. Moreover, there are a number of entries showing internal discussions among attorneys regarding

strategy. While I do not doubt that such discussions occurred, I believe the number of attorneys involved in such discussions is too great.

The billing entries do not neatly carve out what I have described in the preceding paragraph. Thus, I have estimated what I believe is a fair deduction for these amounts.

Ultimately, the Arbitrator found T-Mobile's billing records sufficient to support the fee request, with the exception that he reduced the fee award by $5,000 for work on an unsuccessful motion and for an overstaffed meeting—determinations that he had the discretion to make.

We conclude that C&C has not satisfied its "heavy burden," Am. Tobacco Co., 28 Wn. App. 2d at 479, of demonstrating that the Arbitrator exceeded his authority by granting T-Mobile's request for fees and reducing the requested amount by only $5,000.

CONCLUSION

We affirm the trial court's order confirming the Arbitrator's award of attorney fees to T-Mobile.

Chung, J.

WE CONCUR:

Birk, J.       Dwyer, J.