**MKB CONSTRUCTORS, Plaintiff,**

v.

**AMERICAN ZURICH INSURANCE COMPANY, Defendant.**

**Case No. C13–0611JLR.**

United States District Court,
W.D. Washington,
at Seattle.

Signed Jan. 27, 2015.

A. Richard Dykstra, Peter J. Mullenix, Friedman Rubin, Seattle, WA, Kenneth R. Friedman, Friedman Rubin, Bremerton, WA, for Plaintiff.

Elaine Videa, Jonathan R. Gross, Mound Cotton Wollan & Greengrass, Emeryville, CA, Jose Dino Vasquez, Karr Tuttle Campbell, Seattle, WA, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PREJUDGMENT INTEREST, NONTAXABLE LITIGATION COSTS, AND ATTORNEY'S FEES

JAMES L. ROBART, District Judge.

## I. INTRODUCTION

Before the court is Plaintiff MKB Constructors' ("MKB") motion for prejudgment interest, nontaxable costs, and attorney's fees. (Mot. (Dkt. # 156).) MKB

filed its present motion following a jury trial and verdict in its favor and against Defendant American Zurich Insurance Company ("American Zurich"). (*See* Jury Verdict (Dkt. # 151).) The court has reviewed MKB's motion and reply memorandum, American Zurich's responsive memorandum, and all other materials filed both in support of and opposition to MKB's motion. Being fully advised, the court GRANTS in part and DENIES in part MKB's motion as more fully described below.

## II. BACKGROUND

The court conducted a jury trial from October 20, 2014, to October 24, 2014, on MKB's claims against American Zurich for breach of contract, violation of the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015, and breach of the covenant of good faith and fair dealing. (*See* Dkt. ## 142, 146–47, 149.) On October 24, 2014, the jury awarded MKB a total of $2,357,906.71 in damages (*see* Judg. (Dkt. # 153)), which is comprised of · (1) $1,083,424.24 for American Zurich's breach of contract, (2) $274,482.47 for American Zurich's violation of IFCA, (3) $862,000.00 in enhanced damages under the same statute, and (4) $138,000.00 for American Zurich's failure to act in good faith (*see generally* Jury Verdict (Dkt. # 151)).

MKB now asks the court to increase the judgment by $233,889.69 for prejudgment interest and $160,580.50 for actual litigation costs. (Mot. at 2.) In addition, MKB asks the court to award its reasonable attorney's fees. (*Id.*) MKB asks the court to do so by increasing the amount of the jury's overall verdict by one-third to offset the amount that MKB is contractually obligated to its attorneys under a contingent fee arrangement that MKB negotiated partway through the litigation after initially agreeing to pay its attorney's fees on an hourly basis. (*Id.*) Alternatively, MKB asks the court to award $445,713.80 in attorney's fees based on an unenhanced "lodestar" figure. (*Id.*)

American Zurich implicitly acknowledges that MKB is entitled to awards of prejudgment interest, litigation costs, and attorney's fees following MKB's receipt of the favorable jury verdict detailed above. (*See* Resp. (Dkt. # 167) at 1–2 (asking the court to deny MKB's motion in part by reducing the amount of interest, fees, and costs awarded).) American Zurich, however, argues that MKB is entitled to a lower rate of prejudgment interest (*id.* at 2–4), and that the court should disallow certain categories of litigation costs (*id.* at 4–5). American Zurich also argues that the court should award attorney's fees based on the lodestar method and not based on a percentage of the verdict. (Resp. at 6–7.) Finally, American Zurich argues that MKB overstated its claim for fees because it did not segregate successful and unsuccessful activities, that MKB's fee documentation is inadequate in a number of respects, and that its request is excessive for various reasons. (*Id.* at 7–11.) The court now considers MKB's motion and American Zurich's various objections.

## III. ANALYSIS

### A. Prejudgment Interest

 "In diversity actions brought in federal court a prevailing plaintiff is entitled to pre-judgment interest at state law rates ...." *Onink v. Cardelucci*, 285 F.3d 1231, 1235 (9th Cir.2002); *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir.1988) ("The recognized general rule is that state law determines the rate of prejudgment interest in diversity actions.... The general rule has been followed in this circuit.") (citations omitted). Under Washington law, "[a] party is entitled to prejudgment interest where the

amount due is 'liquidated.'" *Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co.*, 160 Wash.App. 912, 250 P.3d 121, 128 (2011) (citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115, 132 (2000)).

MKB asserts that two components of the judgment are liquidated: (1) the $1,083,424.24 that the jury awarded in contract damages, and (2) $233,659.00 of the jury's $274,482.47 award for "actual damages" under IFCA. (*See* Mot. at 3.) The $233,659.00 figure is based on certain invoices for legal fees from Carney Badley Spellman that MKB incurred after American Zurich denied its insurance claim. (*Id.*) American Zurich does not dispute that these components of the judgment are liquidated sums. (*See generally* Resp.)

 The parties agree that the court determines the rate of prejudgment interest by looking to RCW 4.56.110. (*See* Mot. at 3 ("The *rate* of prejudgment interest is determined in Washington by reference to RCW 4.56.110.") (italics in original); Resp. at 2 ("RCW 4.56.110 provides the various pre-judgment interest rates depending on the type of claim.")); *see also Unigard Ins. Co.*, 250 P.3d at 129. The parties also agree that where a judgment is "mixed," containing both tort and contract claims, the court should apply only one interest rate. (*See* Mot. at 3–4; Resp. at 2); *see also Unigard Ins. Co.*, 250 P.3d at 129. Finally, the parties agree that in determining which rate to apply the court should look to the various components of the judgment and determine whether the judgment is primarily based in tort or in contract. (*See* Mot. at 4; Resp. at 2); *Unigard Ins. Co.*, 250 P.3d at 129.

Beyond agreement on the foregoing three basic precepts, however, the parties' analysis diverges, and they ultimately disagree on how the court should arrive at the correct interest rate to apply. MKB concludes that the court should apply the twelve percent rate applicable to contract disputes[1] (Mot. at 4), while American Zurich concludes that the generally lower rate applicable to torts is appropriate, which is two percentage points above the prime interest rate[2] (Resp. at 3).

MKB argues that in "determining what the judgment is primarily based on" and which uniform interest rate to apply, the court should not look to the judgment as a whole, but rather only to those component parts of the judgment that are liquidated. (*See* Mot. at 4 (citing *Unigard Ins. Co.*, 250 P.3d at 129).) MKB cites no case authority in which a court has expressly adopted this view. (*See generally id.*) Nevertheless, MKB concludes that the judgment is primarily based on contract claims and not tort claims because its award of $1,083,424.24 in liquidated damages for American Zurich's breach of the insurance contract is greater than its award of $233,659.00 in liquidated IFCA damages, which MKB acknowledges "would, standing alone, have the tort rate." (*Id.*) Thus, MKB concludes that the court should apply the interest rate applicable to contracts rather than the lower rate applicable to torts. (*Id.*)

Although the court acknowledges that there is some superficial appeal to MKB's approach, the court is not convinced that it is consistent with Washington law. American Zurich argues that, in determining the

---

1. *See* RCW 4.56.110(4) (incorporating "the maximum rate permitted under RCW 19.52.010"); *see also* RCW 19.52.020 (referencing interest rate of 12 percent per annum).

2. *See* RCW 4.56.110(3)(b) ("[J]udgments founded on the tortious conduct of ... other entities ... shall bear interest ... at two percentage points above the prime rate ....").

applicable interest rate under RCW 4.56.110, the court must consider the nature of the judgment as a whole and not just the liquidated components thereof. Although the court's research did not reveal any cases with the precise facts at issue here, the court concludes, as described below, that Washington case law is more supportive of American Zurich's position.

*Unigard Insurance Company* involved an insurance coverage and bad faith dispute over environmental cleanup costs following the release of hazardous substances. 250 P.3d at 124–25. In that case, the trial court applied a twelve percent prejudgment interest rate based on RCW 4.56.110(4) to the liquidated portion of the judgment consisting of past economic damages. *See* 250 P.3d at 126. The defendant insurer argued that the court should have applied the rate applicable to judgments based primarily on tort claims. *Id.* The plaintiff, however, defended the court's application of the twelve percent interest rate "arguing that the judgment sounded primarily in contract." *Id.* Relying on *Woo v. Fireman's Fund Ins. Co.,* 150 Wash.App. 158, 208 P.3d 557 (2009),[3] the *Unigard* court rejected the plaintiff's position. *Unigard Ins. Co.,* 250 P.3d at 129–30. The court reasoned that a suit between an insurer and its insured stemming from a breach of the policy does not neces-

sarily sound in contract, and instead, the court should determine the primary basis of the judgment by examining "the nature of the various claims and damages," "taking account of all aspects of the relationships between insurer and insured." *Id.* at 129 (citing *Woo,* 208 P.3d at 562–63). In *Unigard,* the court held that because the tort remedy of coverage by estoppel precluded litigation of a coverage (or contract-based) defense, "the bad faith aspects of [the plaintiff's] case dominated the contract aspect and drove the result." *Id.* at 130. Thus, the court held that the interest rate applicable to torts should apply. *Id.* In reaching this result, the court considered the entire judgment and not just those portions to which it applied prejudgment interest. *See id.* at 128–30.

 Because the court in *Unigard Insurance Company* considered the nature of the entire judgment in rendering its decision concerning the proper prejudgment interest rate to apply, despite the fact that the prejudgment interest rate would apply to only a portion of the judgment, this court will too. As American Zurich points out, the breach of contract award was for $1,083,424.24, while the tort claims based on bad faith and IFCA[4] totaled $1,274,482.47. (*See* Jury Verdict.) Thus, considering all the component parts of the judgment, and taking into account all aspects of the relationship between

---

**3.** MKB asserts that *Woo* is inapplicable because it involves the selection and application of a post-judgment, rather than a prejudgment, interest rate. (Reply (Dkt. # 169) at 2.) If this distinction is important, the court in *Unigard Insurance Company,* which is a prejudgment interest rate case, did not think so. The *Unigard* court found *Woo* to be "closer precedent" than the precedent proponed by the plaintiff in *Unigard,* and the *Unigard* court relied upon *Woo* in its analysis and in rendering its decision concerning the proper prejudgment interest rate to apply. *Unigard Ins. Co.,* 250 P.3d at 129–30.

**4.** IFCA is "analogous to a common law suit for bad faith denial of insurance coverage, or more generally analogous to a common law tort claim." *F.C. Bloxom Co. v. Fireman's Fund Ins. Co.,* No. C10–1603RAJ, 2012 WL 5992286, at *4 (W.D.Wash. Nov. 30, 2012). Indeed, MKB has impliedly acknowledge that IFCA would be considered a tort claim under RCW 4.56.110(3). (*See* Mot. at 4 ("[T]he Carney Badley Spellman fees would, standing alone, have the tort rate in RCW 4.56.100(3) applied . . . .").)

MKB and American Zurich, the court concludes that the judgment is primarily based in tort. Accordingly, the interest rate found in RCW 4.56.110(3)(b) for "judgments founded on the tortious conduct of ... entities," which is two percentage points above the prime rate, is applicable here. The court, therefore grants MKB's motion for prejudgment interest, but at the rate found in RCW 4.56.110(3)(b) for judgments based primarily on torts, rather than the rate found in RCW 4.56.110(4).

MKB also asks the court to award prejudgment interest on the breach of contract invoices beginning in April 2013, which is the month following American Zurich's denial of MKB's insurance claim. (Mot. at 4.) Similarly, MKB asks the court to award prejudgment interest on the Carney Badley Spellman invoices beginning in November 2013, which is the month following settlement of the arbitration between MKB and the Lower Yukon School District ("LYSD"). (Id. at 5.) American Zurich objects to these dates as contrary to Washington law. (Resp. at 3–4.) The parties agree that under Washington law prejudgment interest should run from the date each particular invoice was paid. (Mot. at 4 (citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115, 133 (2000) ("The date those invoices were paid established the proper time interest began to run.")); Resp. at 3–4 (also citing *Weyerhaeuser*).) MKB asserts, however, that "the sheer volume of independent invoices would make such a calculation an unreasonable burden on the court and the parties," and thus the court should simply employ a short-cut and award prejudgment interest from two dates cited above. (Mot. at 4.) American Zurich counters that "[t]he burden is on MKB" to base its calculations on Washington law, and because "MKB has not explained which invoices were paid

when, ... it [is] impossible for [American] Zurich to ... know whether it is prejudiced" by MKB's novel approach. (Resp. at 4.)

In the materials filed with its reply memorandum, MKB confirms that all of the invoices associated with its breach of contract claim were paid prior to March 23, 2013. (Lickliter Decl. (Dkt. # 170) ¶ 3.) MKB also confirms that all but two of the Carney Badley Spellman invoices were paid prior to November 2013, but calculating the interest on all of the invoices as if they were paid no later than November 2013 results in a $393.95 benefit to American Zurich. Because MKB has confirmed that selecting the dates it proposes for the commencement of prejudgment interest with respect to the invoices at issue does not prejudice American Zurich, and in fact operates as a net benefit to American Zurich, the court will apply those dates.

### B. Attorney's Fees

In early 2014, MKB switched from paying its counsel's fees on an hourly basis to a contingent fee arrangement. (See Jensen Decl. ¶¶ 22–23.) As a result, MKB now seeks an order from the court increasing the amount of its overall judgment by 33% to compensate it for the fee it is now obliged to pay its attorneys out of its overall recovery. (See Mot. at 10.) Alternatively, MKB seeks an award of $445,713.80 in fees based on an unenhanced lodestar calculation. (See id. at 10–11.)

Because MKB prevailed on its claim under IFCA that American Zurich had unreasonably denied MKB's claim for coverage, MKB is entitled to recover its attorney's fees under that statute. See RCW 48.30.015(3). MKB is also entitled to recover its fees under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117

Wash.2d 37, 811 P.2d 673, 680–81 (1991), as a prevailing insured in a "legal action where the insurer compell[ed] the insured to assume the burden of legal action, to obtain the full benefit of [the] insurance contract." *Id.* at 681. American Zurich does not dispute that MKB is entitled to an award of fees based on the jury's verdict. (*See generally* Resp.) Instead, American Zurich argues that MKB's request for fees is excessive for several reasons. (*Id.* at 5–12.)

### 1. Contingency Fee/Percentage of the Judgment

 First, the court agrees with American Zurich that MKB's request for an award of attorney's fees by increasing the overall judgment by 33% is without support under Washington law.[5] (*See* Resp. at 6.) MKB admits that it could find no case authority in the context of an insurance coverage action authorizing an attorney fee award based on a percentage of the insured's overall judgment. (*Id.* at 10.) The lodestar method is "the default principle for fee calculation in Washington." *See Brand v. Dep't of Labor & Indus.*, 139 Wash.2d 659, 989 P.2d 1111, 1119 (1999); *see also Mahler v. Szucs*, 135 Wash.2d 398, 957 P.2d 632, 651 (1998) ("In the past, we have expressed more than modest concern regarding the need of litigants and courts to rigorously adhere to the lodestar methodology."), *overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wash.2d 643, 272 P.3d 802 (2012). Indeed, Washington law presumes that a properly calculated lodestar figure represents reasonable compensation for counsel. *Henningsen v. Worldcom, Inc.*, 102 Wash.App. 828, 9 P.3d 948, 959 (2000). Given these precepts of Washington law, the court declines to carve out a new and unprecedented approach for fee calculation in insurance coverage disputes in the context of this case. Accordingly, the court denies MKB's request for fees based on a percentage of the overall judgment and instead will adhere to Washington's traditional lodestar methodology.

### 2. Lodestar Method

 Under the lodestar method, there are two primary steps to calculating a fee award. *Bowers v. Transamerica Title Ins. Co.*, 100 Wash.2d 581, 675 P.2d 193, 201 (1983) (quoting *Miles v. Sampson,* 675 F.2d 5, 8 (1st Cir.1982)). "First, a 'lodestar' fee is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit."[6] *Id.* MKB has calculated this figure to be $445,713.80. (Mot. at 11 (citing Jensen Decl. (Dkt. # 159) Ex. 3 (attaching invoices sent prior to MKB's switch to a contingent fee); Mullinex Decl. (Dkt. # 158) Ex. 1 (attaching time records after MKB's switch to a contingent fee)).) "Second, the 'lodestar' is adjusted up or down to reflect factors, such as the contingent nature of success in the lawsuit or the quality of legal representation, which have not already been taken into account in computing the 'lodestar' and which are shown to warrant the adjustment by the party proposing it." *Id.* at 201–02. A party seeking attorney's fees "bears the

---

5. The court applies Washington law to determine the amount of fees because Washington law dictates whether fees are available in this case. *See Madera W. Condo. Ass'n v. First Specialty Ins. Corp.*, No. C12–0857–JCC, 2013 WL 5492964, at *6 n. 2 (W.D.Wash. Oct. 1, 2013).

6. American Zurich has not challenged the hourly rates of MKB's attorneys (*see* Talmage Decl. at 9), and the court finds that the hourly rates charged by MKB's counsel are reasonable given their experience, background, and performance in this litigation.

**1086**

burden of proving the reasonableness of the fees." *Mahler,* 957 P.2d at 651.

### a. Multiplier

 Although the lodestar methodology permits a party to request an upward adjustment (commonly known as a multiplier), such adjustments are "rare" under Washington law. *Mahler,* 957 P.2d at 651. In its motion, MKB did not ask for an upward adjustment of the lodestar figure based on the "contingent nature of success in the lawsuit," *Bowers,* 675 P.2d at 201. (*See generally* Mot.) Rather, as an alternative to its request for a 33% increase in the overall judgment, MKB seeks $455,713.00, which is a straight calculation of its attorneys' hourly rates multiplied by the hours each of those attorneys billed, without any upward or downward adjustment. (*See id.* at 10 ("The [c]ourt should increase the judgment by 33% or, alternatively, [award] $455,713.00 for reasonable attorney fees incurred in bringing the coverage and IFCA claims."); *id.* at 11 (calculating total lodestar figure without requesting multiplier).) Although MKB

does not seek a multiplier in its motion, it does ask for a 2.05 multiplier to be applied to the foregoing lodestar figure in its reply memorandum. (*See* Reply at 4–5.) This request, however, comes too late to provide American Zurich with an opportunity to respond. Accordingly, the court declines to consider it.[7] *See Martinez–Serrano v. INS,* 94 F.3d 1256, 1259–60 (9th Cir.1996) (declining to consider arguments raised for the first time in an appellant's reply brief); *see also Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1514 n. 6 (9th Cir.1994) (acknowledging that "serious questions of fairness" arise when a party advances an issue for the first time in his reply). MKB also does not request an upward adjustment of the lodestar based on the quality of its representation. (*See generally* Mot.; Reply.) The court, therefore, will not make any upward adjustment to MKB's lodestar figure of $455,713.00.

### b. Reasonable Number of Hours

 The parties' dispute over MKB's claim for attorney's fees focuses on the

---

7. In any event, MKB failed meet its burden with respect to the application of a multiplier. "The burden of justifying any deviation from the lodestar rests upon the party proposing it." *Berryman v. Metcalf,* 177 Wash.App. 644, 312 P.3d 745, 758 (2013). MKB's only argument for a multiplier is that its fee agreement with its attorneys shifted to a contingency basis about a year into the litigation, but "Washington law does not require the application of a multiplier in every contingency fee case." *St. Paul Fire & Marine Ins. Co. v. Hebert Constr. Inc.,* No. C05–388Z, 2007 WL 563114, at *4 (W.D.Wash.2007) (citing *Faraj v. Chulisie,* 125 Wash.App. 536, 105 P.3d 36, 43 (2004) (recognizing that multipliers can be appropriate in contingency cases but declining to apply one where the trial court did not)). "The purpose of an upward adjustment of the lodestar is to account for the contingent nature of the agreement and is based on an assessment of the likelihood of success at the outset of the litigation." *Bowers,* 675 P.2d at 204. Nowhere does MKB

provide this risk assessment for the court or explain why this coverage action involved unusual risk. Given this failure and given the generally favorable state of the law in Washington for insureds, the court cannot conclude that this insurance coverage action involved unusual risk either at the outset or at the time that MKB's fee arrangement shifted to a contingency basis. Further, given the fact that MKB's attorneys were paid in full for approximately one year of the litigation, this "was not a high risk contingency case in which the lawyers risked no recovery at all for their services." *See 224 Westlake, LLC v. Engstrom Props., LLC,* 169 Wash.App. 700, 281 P.3d 693, 714 (2012) (reversing trial court's enhancement of the lodestar for the contingent nature of the case because the contingency fee arrangement was entered into when plaintiff's principals became concerned about continuing to pay legal fees after about eleven months of litigation and the contingent fee arrangement included paying counsel at half their hourly rates).

number of attorney hours for which MKB claims it is entitled to reimbursement and the reasonableness of those hours. Under Washington law, the court is required to independently determine whether MKB has sustained it burden of demonstrating that the number of hours expended by counsel was reasonable rather than merely relying upon MKB's billing records. *See Mayer v. City of Seattle*, 102 Wash.App. 66, 10 P.3d 408, 415 (2000); *see also SentinelC3, Inc. v. Hunt*, 181 Wash.2d 127, 331 P.3d 40, 48 (2014) ("In determining an award of attorney's fees, the trial court may not rely solely on counsel's fee affidavit.").

■ American Zurich makes a number of arguments as to why the court should reduce MKB's claim for attorney fees. First, American Zurich argues that MKB's bill should be reduced due to the number of "block" time entries[8] in the time records and because some of the descriptions in the time entries are truncated and provide little detail, such as "trial" or "trial preparation." (Resp. at 9; Talmage Decl. at 9.) Having carefully reviewed MKB's counsel's time records, the court does not find counsel's descriptions of the work performed to be inadequate. The documentation "need not be exhaustive or in minute detail, but must inform the court ... of the type of work performed ...." *Bowers v. Transamerica Title Ins. Co.*, 100 Wash.2d 581, 675 P.2d 193, 203 (1983). Here, although billing entries for "trial," "trial preparation," or similarly truncated terms do not reflect model practice, the court does not find that they fall below the standard set forth in *Bowers*.

The court, however, is concerned about the number of "block" time entries con-

tained in the billing records. (*See generally* Mullinex Decl. Ex. 1; Jensen Decl. Ex. 3.) For example, on March 19, 2014, Mr. Mullenix billed 10.4 hours for the following tasks: "Continue drafting CR37 submission; Meeting with bad faith expert; Review Request for Admission answers; Research effect of Request for Admission non-answer; Continue drafting CR 37 submission." (Mullinex Decl. Ex. 1 at 66.) Likewise, on March 13, 2014, he billed 6 hours for the following tasks: "Prepare for Zimmerman deposition; Prepare for CR 37: Meeting with bad faith expert." (*Id.* at 67.) On March 31, 2014, Mr. Dykstra billed 6.8 hours for the following tasks: "Research on efficient proximate cause and dominant cause cases; Email to Peter regarding subjects to ask Dugo; Review N & M report and attachments to determine methodology." (*Id.* at 58.) In reviewing these and similar entries throughout MKB's attorneys' billing records, there is no way for the court to calculate how much attorney time was actually spent on any given task.

Courts have repeatedly found that counsel's practice of "lumping together multiple tasks, mak[es] it impossible to evaluate their reasonableness." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C.Cir.2004); *see also Berryman v. Metcalf*, 177 Wash.App. 644, 312 P.3d 745, 756 (2013) ("The block billing entries tend to be obscure."). As a result, the district court has the "authority to reduce hours that are billed in block format." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir.2007); *see Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1223 (9th Cir.2010) (ruling district court did not abuse its discretion by reduc-

---

8. "Block billing is the time-keeping method by which each lawyer ... enters the total daily time spent working on a case, rather than itemizing the time expended on specific

tasks." *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir.2007) (internal quotations marks omitted).

ing 80% of attorney's billable hours by 30% for block billing). The court notes, however, that not all entries are block billed, and that Mr. Dykstra in particular frequently made efforts to account for the time spent on individual tasks within his otherwise block time entries.[9] Nevertheless, the number of block entries overall is significant and undermines the sufficiency of those records for purposes of MKB meeting its burden of proof on this motion. Having carefully reviewed counsel's billing records, the court finds that a 20% reduction of all the blocked entries within MKB's attorney's billing records is appropriate.[10] *See, e.g., eMove Inc. v. SMD Software Inc.*, No. CV–10–02052–PHX–JRG, 2012 WL 4856276, at *7 (D.Ariz. Oct. 11, 2012) (reducing blocked billing entries by 20%); *see also Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10–CV–0541–GPC (WVG), 2014 WL 6851612, at *9 (S.D.Cal. Dec. 3, 2014) (finding plaintiffs' own 20% reduction of block-billed hours to be appropriate).

American Zurich also argues that it was excessive for MKB to employ a third attorney, Mr. Kenneth Friedman, at the last minute for trial,[11] and that MKB's request for fees should be reduced because Mr. Friedman made no effort to reduce his bill for the initial hours he spent "getting up to speed" on the case and because he did not record his time contemporaneously but rather reconstructed his time after the fact. (Resp. at 8, 11; Talmadge Decl. at 4–5, 7–8, 10.) The court does not find that Mr. Friedman's addition to MKB's team of attorneys just before trial was excessive or that he spent excessive hours "getting up to speed." · Although it is not a uniform practice, it is not unusual for parties in this district to add an attorney with trial experience in the later stages of litigation if it looks as though the case will in fact go to trial. Further, all attorneys must spend time familiarizing themselves with a case in order to perform effectively as an advocate, and based on the court's review of Mr. Friedman's time records, there is no indication that he charged an excessive number of hours for this purpose. Thus, the court does not find that either of these grounds provides a basis for any reduction in MKB's fee award.

The court, however, is more concerned with the lack of contemporaneous recording and the after the fact reconstruction of Mr. Friedman's time records. Mr. Friedman does not deny that he reconstructed his time after the fact. (*See* Supp. Friedman Decl. (Dkt. # 171) ¶ 5.) He also acknowledges that recording time records contemporaneously is the "preferred" method, and that basing a fee request on

---

9. For example, on April 8, 2014, Mr. Dykstra billed 4.6 hours, breaking down individual tasks, as follows: "Draft and finalize letter to Videa regarding MKB claim of work product privilege (2.4)[;] Revisions to Reply on Motion to Compel (1.2); Review of Nguyen documents (1.0)." (Mullinex Decl. Ex. 1 at 59.)

10. This portion of the court's order applies to all of MKB's attorneys' time records contained within both Exhibit 1 of Mr. Mullinex's declaration and Exhibit 3 of Mr. Jensen's declaration. (*See* Mullinex Decl. Ex. 1; Jensen Decl. Ex. 3.) If a particular time entry is blocked, then that entry is to be reduced by 20%, but if a time entry is not blocked, then

no reduction of that entry is required under this portion of the court's order.

11. In addition, American Zurich complains that it was excessive for MKB to assign multiple attorneys to matters such as depositions and motions without any explanation as to why it was necessary for multiple attorneys to work on these matters. (*Id.* at 12; Talmage Decl. at 9.) The court, however, does not find that the assignment of two attorneys to this case prior to trial or the addition of a third attorney shortly before trial to be excessive or out of the ordinary for typical practice in the Western District of Washington for a case with this level of complexity.

reconstructed records developed from litigation files "may 'provide the district court with a reason to reduce the fee.' " (*Id.* (citing *Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir.2000)).) Mr. Friedman, however, also testifies that "none of the reconstructed time was remote in time" and that he is "certain that the claimed hours omitted a significant number of hours that could have been claimed," since he "was careful to include only time that [he] could reconstruct accurately." (*Id.*) The court credits Mr. Friedman's testimony that he carefully omitted time that he could not reconstruct accurately and that his omission of hours was significant. The court, therefore, will not require any further reduction in hours by Mr. Friedman.

 Finally, American Zurich argues MKB's request for fees is excessive because it made no effort to segregate time spent on successful claims or activities from time spent on unsuccessful claims or activities. (Resp. at 9–11; Talmadge Decl. at 5.) Under Washington law, "[t]he total hours an attorney has recorded for work in a case is to be discounted for hours spent on 'unsuccessful claims … or otherwise unproductive time.' " *Miller v. Kenny*, 180 Wash.App. 772, 325 P.3d 278, 303 (2014) (quoting *Bowers v. Transamerica Title Ins. Co.*, 100 Wash.2d 581, 675 P.2d 193, 203 (1983)). Washington courts instruct that a trial court must segregate fees where possible, but may avoid doing so if the claims are "so related that no reasonable segregation … can be made." *Hume v. Am. Disposal Co.*, 124 Wash.2d 656, 880 P.2d 988, 997 (1994).

American Zurich argues that MKB was unsuccessful or only partially successful on a variety of activities prior to trial, including: (1) MKB's motion for bifurcation, which the court denied (Dkt. # 73); (2) MKB's first, second and third motions to compel based on *Cedell v. Farmers Insur-*

*ance Company of Washington,* 176 Wash.2d 686, 295 P.3d 239 (2013), which the court largely denied, because although the court ordered American Zurich to produce a revised privilege log and reviewed a portion of American Zurich's privileged documents in camera, the court ultimately did not order American Zurich to produce any of the documents at issue to MKB (*see* Dkt. ## 67, 99, 102); (4) MKB's motion for reconsideration of the court's order concerning the scope of in camera review, which the court denied (Dkt. # 101); (5) MKB's motion for summary judgment, which the court largely denied (except for MKB's claim that it had complied with the notice provisions of IFCA) (Dkt. # 128); (6) MKB's claims that it was entitled to the $1,436,419.40 contract price it had paid to LYSD and its arbitration costs with LYSD as two parts of its breach of contract damages, both of which the court denied by granting American Zurich's motion for summary judgment with respect to those categories of damages (Dkt. # 128 at 15–24); (7) MKB's attempt to use a supplemental contract damages calculation at trial that was untimely disclosed and which the court excluded (Dkt. # 129); (8) MKB's motion for reconsideration of the court's order concerning use of its supplemental damages calculation, which the court denied (Dkt. # 132); and (9) MKB's claim for breach of Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86, which MKB summarily withdrew partway through trial (*compare* Prelim. JI (Dkt. # 144) (including claim for CPA violation) *with* JI (Dkt. # 149) (not including claim for CPA violation)).

With respect to the last of these items, the court finds that it is not possible to segregate the time MKB's attorneys spent on the claims that MKB successfully brought at trial for breach of contract, violation of IFCA, and bad faith, from the

CPA claim that MKB abandoned partway through trial. *See, e.g., Miller,* 325 P.3d at 303–04 (affirming trial court's finding that fees based on claims for bad faith and violation of the CPA were factually "interrelated" and not reasonably segregated). The court cannot say, for example, that MKB would have spent less time in depositions, crafting written discovery questions or responses, or at trial, if MKB had never asserted its CPA claim. Thus, the court concludes that no reduction in fees for MKB's abandonment of its CPA claim is warranted.

The court, however, is convinced that the time MKB spent on its largely unsuccessful pre-trial discovery and dispositive motions and the time it spent pursuing certain categories of contract damages that were ultimately dismissed or excluded from trial as disclosed in an untimely manner is capable of segregation. The first eight items listed above were specific tasks or activities that MKB's attorneys strategically chose to pursue, but that proved to be unproductive in furthering MKB's claims against American Zurich. Having reviewed and ruled upon the various motions and categories of damages listed above and at issue here, and having presided at the trial, the court finds that MKB's efforts with respect to the listed items were unnecessarily expended and insufficiently related to the overall success of the litigation to warrant an award of fees. *See Pham v. City of Seattle,* 159 Wash.2d 527, 151 P.3d 976, 981–82 (2007) (affirming trial court's segregation of and declination to award fees for, among other items, plaintiffs' unsuccessful cross-motion for summary judgment and other unsuccessful motions as "unnecessarily expended, unproductive, or not sufficiently related to the successful claims").

MKB's attorney billing records in this case are approximately 135 pages long.

(*See* Mullinex Decl. Ex. 1; Jensen Decl. Ex. 3.) Although the court should exclude any wasteful or duplicative hours and any hours for unsuccessful theories or claims, "an explicit hour-by-hour analysis of each lawyer's time sheets" is unnecessary as long as the court considers relevant factors and gives reasons for the amount awarded. *See Progressive Animal Welfare Soc'y v. Univ. of Wash.,* 54 Wash.App. 180, 773 P.2d 114, 118 (1989), *rev'd on other grounds,* 114 Wash.2d 677, 790 P.2d 604 (1990). The court declines to undertake an hour-by-hour analysis of MKB's fees in order to excise the precise number of hours attributable to the unproductive items listed above. Indeed, in light of the substantial number of blocked entries in MKB's bills, such an undertaking would not be successful in any event. Nevertheless, this court reviewed and ruled upon all of the parties' pretrial motions and presided over the trial herein. Thus, the court is capable of estimating the percentage of hours entailed in the unproductive and unnecessary activities listed above. *See Yousoufian v. Office of Ron Sims,* 114 Wash. App. 836, 60 P.3d 667, 676–77 (2003) (affirming trial court's percentage reduction in fee application for unproductive time), *aff'd in part and rev'd on other grounds,* 152 Wash.2d 421, 98 P.3d 463 (2004); *see also Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir.1992) (affirming across the board percentage reduction in fees "when faced with a massive fee application" where district court appropriately describes its rationale for doing so); *Clausen v. Icicle Seafoods, Inc.,* 174 Wash.2d 70, 272 P.3d 827, 834 (2012) (upholding trial court's percentage reduction in fees in context of maintenance and cure action "where the specifics of the case make segregating the actual hours difficult"). Accordingly, the court finds that an overall 20% reduction in MKB's claimed fees would sufficiently account for the hours

spent on the unproductive activities listed above that are contained in MKB's fee request.

 In sum, the court employs the traditional lodestar test when evaluating MKB's request for reasonable attorney fees. The court declines to apply a multiplier to MKB's lodestar figure. The court requires MKB to reduce all blocked billing entries by 20%. The court further requires an across the board 20% reduction in MKB's attorney fee award for its failure to account for the hours it spent on a variety of unproductive pretrial activities and damages claims.

## C. Actual Litigation Costs

MKB seeks recovery of its litigation costs on two grounds. First, MKB prevailed on its IFCA claim, and IFCA provides for the recovery of "actual and statutory litigation costs, including expert witness fees." RCW 48.30.015(3). Second, under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wash.2d 37, 811 P.2d 673, 680–81 (1991), MKB is entitled not only to its attorney fees, but also to "be compensated for **all** of the expenses necessary to establish coverage as part of those attorney fees which are reasonable." *Panorama Village Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wash.2d 130, 26 P.3d 910, 917 (2001) (bolding in original).

Under the foregoing Authority, MKB seeks recovery of $160,580.50 in litigation costs. (Mot. at 5.) MKB breaks these costs down into four categories: (1) expert witness fees paid by MKB totaling $54,162.10 (*id.* at 8), (2) travel expenses paid by MKB totaling $5,402.55 (*id.* at 8), (3) MKB's labor costs totaling $49,249.95 (*id.* at 8–9), and (4) litigation costs advanced by MKB's attorneys totaling $52,115.94 (*id.* at 7). The court will consider each category in turn.

### 1. Expert Witness Fees

 American Zurich has not challenged MKB's claim for expert witness fees and appears to agree that Washington law permits MKB to recover these expenses in the context of a coverage dispute in which the insured prevails. (*See generally* Resp.; Talmage Decl. (Dkt. # 168) at 4 ("In *Panorama Village* ..., the Washington Supreme Court authorized a party in an insurance coverage dispute to recover expert witness fees pursuant to an equitable exception.").) The court agrees that these costs are specifically allowed under *Panorama Village*, 26 P.3d at 917, and thus the court grants this portion of MKB's motion.

### 2. Travel Expenses

 In addition, the court could not find any challenge in American Zurich's response to the travel expenses paid for by MKB. (*See generally* Resp.; Talmage Decl.) Specifically, MKB claims Mr. Jensen's travel expenses for a trip in which he joined counsel in California for the depositions of Richard Dugo and Richard Norman, who were involved in the handling of MKB's claim, as well as travel expenses that MKB incurred to have its witnesses travel to Seattle for live testimony at trial. (*See* Mot. at 8; Jensen Decl. ¶ 19, Ex. 6.) As a party to the litigation, MKB is entitled to have a client representative present at depositions, and the court finds that it is reasonable for MKB to pay travel expenses to have its witnesses present for live testimony at trial. The court, therefore, grants this portion of MKB's motion as well.

### 3. MKB's Labor Costs

 MKB seeks $49,249.95 in labor costs that it asserts it incurred as a result of its employees or former employees at-

tendance at depositions or trial or providing other support to MKB's litigation effort. (Jensen Decl. (Dkt. #159) ¶¶ 2–13.) American Zurich objects to "MKB's unprecedented wage claim for MKB staff—including Mark Jensen, Andy Romine, and Bill Nesheim—during the course of the litigation." (Resp. at 5.)

The court agrees with American Zurich that MKB's recovery of wages for employees who testified or otherwise participated in MKB's lawsuit against American Zurich would be an unprecedented stretch of both the IFCA provision awarding "actual" litigation expenses, RCW 48.30.015(3), and the costs "necessary to establish coverage" that MKB is entitled to recover under *Panorama Village*, 26 P.3d at 917. MKB was obligated to pay salaries to its employees irrespective of its litigation with American Zurich. MKB acknowledges that it could find no Washington case authority supporting an award of this type of "cost" (Reply at 3 ("[I]t is true that no case cited by MKB *requires* the [c]ourt to order that amount.") (italics in original)), and the court could find no such case either. Absent some Washington authority indicating that either RCW 48.30.015(3) or *Panorama Village* should be extended to cover expenses for labor that MKB would have incurred irrespective of its coverage suit, the court is unwilling to order the reimbursement of these "costs" here. Such an order would constitute an unprecedented extension of Washington law that is not the province of this court to undertake.

In addition, even if the court were inclined to award these costs (which it is not), much of MKB's documentation of the time that its employees spent supporting the litigation is inadequate. Although MKB apparently has "time records" concerning some of the employees at issue (*see* Jensen Decl. ¶¶ 7–8), copies of those records have not been provided to the court. Further, the exhibit detailing MKB's costs associated with Mr. Romine's and Mr. Nesheim's participation in depositions and at trial indicates that the hours attributed to each of these men are only estimates created long after the fact by Mr. Jensen. (*Id.* ¶¶ 7–8, Ex. 1.) Moreover, there is no testimony or evidence directly from either Mr. Romine or Mr. Nesheim regarding the amount of time that they spent participating in any phase of the litigation. In the context of an attorney fee petition, Washington courts have stated that counsel "must provide contemporaneous records documenting the hours worked." *Johnson v. Wash. Dep't of Transp.*, 177 Wash.App. 684, 313 P.3d 1197, 1205 (2013). Reconstructed records "should only be credited if supported by other evidence such as testimony or secondary documentation." *Id.* Here, MKB has not provided any secondary documentation or the testimony of the two individuals who actually accrued the time. The court finds MKB's documentation of these reconstructed hours to be inadequate. Accordingly, the court denies the portion of MKB's motion related to labor costs for Mr. Romine and Mr. Nesheim on this ground as well.

Mr. Jensen also appears to have reconstructed and estimated his own time that he attributes to assisting with the litigation, but there is no indication that this reconstruction is based upon the review of any contemporaneously recorded time records. (*See id.* ¶¶ 9–12.) Mr. Jensen indicates that he believes his reconstruction is "conservative" (*see id.* ¶¶ 9–11) and that the hours are "easily identified" because "[a]s shown in Exhibit 1 ..., the depositions I attended required scheduled blocks of time that required travel so the hours are easily identified" (*id.* ¶ 11). However, Mr. Jensen provides no explanation concerning why or how his estimate is a "conservative" one, nor does anything in Ex-

hibit 1 identify the blocks of time he spent attending depositions. Like the hours claimed for Mr. Romine and Mr. Nesheim, the court concludes that even if this type of "cost" were reimbursable under Washington law, MKB has failed to provide adequate documentation of the time Mr. Jensen spent on the litigation to justify such an award.

Finally, MKB also asks the court to order American Zurich to reimburse MKB for the $3,355.20 that MKB paid to Mr. Nesheim and Mr. Romaine to secure their attendance at trial once they were no longer employees of MKB. (*See id.* at ¶ 13, Ex. 2.) MKB argues that the payment of a fee to these former employees for their factual testimony is "akin" to the payment of " 'expert' charges." (Mot. at 9.)

Reimbursement for this type of payment to lay witnesses would also represent an unprecedented expansion of the type of costs that courts have previously awarded to prevailing insureds under either IFCA or *Panorama Village.* MKB offers no specific authority in which a court has ordered the payment of fact witness to be reimbursed under either IFCA or *Panorama Village* beyond the statutory witness fee permitted under RCW 2.40.010. (*See generally* Mot.) "Reimbursement to lay witnesses for time spent 'responding to legal matters' is an issue not widely addressed." *Johnson,* 313 P.3d at 1207. Washington courts, however, have expressly held that professionals, like Mr. Nesheim and Mr. Romaine, "who acquire or develop facts not in anticipation of litigation are not entitled to expert witness fees." *Paiya v. Durham Constr. Co.,* 69 Wash.App. 578, 849 P.2d 660, 661 n. 1 (1993); *see also Baird v. Larson,* 59 Wash. App. 715, 801 P.2d 247, 249 (1990) ("Professionals who have acquired or developed facts and opinions not in anticipation of litigation but from involvement as an actor in a transaction, are not entitled to expert witness fees."). Thus, the court is disinclined to adopt MKB's position that the payment of these witnesses is "akin" to an expert witness fee since Washington courts have expressly disallowed such fees to fact or occurrence witnesses.

Moreover, in the context of a motion to recover fees and costs under Washington's Law Against Discrimination ("WLAD"), the Washington Court of Appeals expressed doubt that "costs for a fact witness's time spent 'responding to legal matters' " are recoverable in general, *see Johnson,* 313 P.3d at 1207, and expressly "declined to hold that time spent by a fact-witness treating physician 'responding to legal matters' is recoverable as a WLAD litigation cost," *id.* at 1208. If this type of cost is not recoverable under WLAD, which allows a "liberal recovery of costs by the prevailing party," *Blair v. Wash. State Univ.,* 108 Wash.2d 558, 740 P.2d 1379, 1387 (1987), the court is doubtful such costs would be recoverable under IFCA or *Panorama Village* either.

Finally, the court notes that the payment of fact witnesses is ordinarily limited to the amount prescribed as a statutory fee. *See* RCW 2.40.010. The State's sound public policy is reflected in that statute. *See, e.g., Beard v. Ragan,* No. CL 99–064, 2000 WL 33258655, at *4 (Va.Cir. Ct. Jan. 12, 2000) ("The public policy of the Commonwealth is ... expressed in the statutes setting witness fees. ... At common law witnesses were not paid at all, attendance and testimony being considered an important duty of citizenship."). The court does not suggest, nor does American Zurich argue, that MKB's payment of fees to these witnesses was improper. Nevertheless, absent clear Washington authority directing the recovery under either IFCA or *Panorama Village* of payments to fact witnesses in excess of the statutory

amount, this court declines to order the reimbursement of such expenditures. MKB could have presented the testimony of both of these witnesses at trial through their depositions. Instead, MKB chose to pay these witnesses extra money in order to secure their personal appearance in the courtroom. Although MKB made the strategic decision to incur this cost, the court cannot conclude that these expenses were "actual" litigation costs under IFCA or were costs "necessary" to establish coverage under *Panorama Village.* Thus, the court denies this portion of MKB's motion as well.

### 4. Litigation Costs Advanced by MKB's Attorneys

Finally, MKB seeks to recover $52,115.94 in litigation expenses incurred by its attorneys. (Jensen Decl. ¶¶ 14–16, Exs. 3–5.) MKB asserts that these costs fall into the following categories: (1) electronic legal research, (2) photocopying charges, (3) the mediation fee, (4) messenger and Federal Express fees, (5) court reporter and videographer fees, (5) meals during working lunches, (6) costs incurred by attorneys for travel to depositions (including airfare, taxi fees, parking, meals, and hotel charges), (7) telephone conference fees, (8) the cost of a magnifying glass (for reading survey documents), (9) PACER fees for searching electronic dockets for other cases involving witnesses, (10) ferry costs for attorneys commuting from Bremerton for meetings in Seattle, (11) the cost of daily trial transcriptions, (12) the cost for hotel rooms near the courthouse for one of MKB's attorneys and his assistant during trial, (13) the cost of parking for one of MKB's attorneys during trial, (14) hotel rooms for witnesses during trial, and (15) meals for the trial team during trial. (*See* Mot. at 7; Jensen Decl. Exs. 3–5.) MKB, however, does not identify the portion of its costs that belongs in each of the above categories or identify the specific cost invoices that fall into each of the above categories.

American Zurich does not dispute that MKB is entitled to an award of costs or that the attorneys incurred each of the expenses MKB claims above. (*See* Mullinex Decl. Ex. 2.) Instead, American Zurich asserts "a general objection to the extent MKB seeks reimbursement for costs beyond the permissible boundaries of *Panorama Village* [, 26 P.3d at 917,] and IFCA[, RCW 48.30.015(3) ], including MKB's attorney's personal expenses (meals, ferry expenses, and hotel accommodations); [and] office overhead expenses (copy charges, etc.)." [12] (Resp. at 5.) American Zurich argues that MKB's

---

**12.** American Zurich also objects to "the recovery of arbitration costs." (Resp. at 5.) American Zurich, however, did not identify any specific costs in MKB's motion that American Zurich believes pertained to MKB's arbitration with the LYSD, and this court could identify none. If such arbitration costs are included in MKB's request for reimbursement, they should be excised. *Panorama Village* pertains to the recovery of costs in the coverage litigation, *see* 26 P.3d at 917 ("The insured must therefore be compensated for **all** of the expenses necessary to establish coverage . . . .") (bolding in original), and IFCA provides for recovery by "[a]ny first party claimant to a policy of insurance who is un-

reasonably denied a claim for coverage" of "the actual damages sustained, together with the costs of the action." RCW 48.30.015(1). The statute therefore provides for recovery of costs incurred in the coverage action involving an IFCA claim—not of some other action or arbitration. *See also* RCW 48.30.015(3) ("The superior court shall . . . award . . . actual and statutory litigation costs . . . to . . . the prevailing party in such an action."). To recover costs incurred in another action or proceeding, the insured would have to demonstrate at trial that such costs fell within its "actual damages" under IFCA, but that issue is not presently before the court.

request for litigation costs and expenses "far exceeds" what is permitted under either authority and "intrud[es] into a recovery of ... what are usually considered damages." (Talmage Decl. (Dkt. # 168) at 14.) Because both MKB and American Zurich referred in their arguments only to the categories of costs claimed by MKB and not to specific invoices, the court will confine its ruling on this portion of MKB's claim for costs to a discussion of the identified categories as well.

IFCA permits the court to award "actual and statutory litigation costs, including expert witness fees," RCW 48.30.015(3), and *Panorama Village* permits the court to award "**all** of the expenses necessary to establish coverage" in order to make the insured "whole." *Panorama Village*, 26 P.3d at 917 (bolding in original). There are few cases describing the precise categories of "actual" or "necessary" costs or litigation expenses that fall within the parameters of IFCA or *Panorama Village*. In *Panorama*, the issue was whether charges for electronic legal research and expert witness fees should have been included within the allowance for attorney fees provided for under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wash.2d 37, 811 P.2d 673, 681 (1991). *See Panorama Village*, 26 P.3d at 917. *Panorama* does not provide any ruling concerning reimbursement of items such as airfare or charges for food and lodging. *See generally id.* In evaluating the type of costs and expenses for which MKB should be reimbursed, the court is mindful that under *Panorama Village* the insured should be made "whole," but that the court should award only "expenses necessary to establish coverage," *id.*, and that under IFCA the amounts awarded must represent "actual ... litigation costs," RCW 48.30.015(3).

■ American Zurich appears to concede that electronic legal research fees are recoverable (Talmage Decl. at 14) ("[E]xpenses often include Westlaw charges."), and allowing recovery of these costs is consistent with *Panorama Village*, 26 P.3d at 917–18. Accordingly, the court will allow MKB to recovery these expenses. *See also Philips Oral Healthcare, Inc. v. Fed. Ins. Co.*, No. C98–1211JLR, 2005 WL 3020014 (W.D.Wash. Nov. 10, 2005) (awarding Westlaw research charges under *Panorama Village* ).

In addition, the court finds that MKB is entitled to recover the following additional categories of costs: photocopying charges, messenger and Federal Express charges, court reporter and videographer fees, costs incurred by attorneys while traveling to conduct depositions, telephone conference fees, PACER fees, and hotel rooms for out-of-town witnesses during trial. *See, e.g., McCrary v. Life Ins. Co. of N.A.*, No. CV 01–360–BR, 2002 WL 31466491, at *11 (D.Or. Mar. 7, 2002) (awarding filing fees, photocopying, long distance telephone charges, facsimile charges, computer-assisted legal research, and expert witness fees under the *Olympic Steamship/Panorama Village* fee and cost shifting rule). These are costs or expenses that were "necessary to establish coverage," *Panorama Village*, 26 P.3d at 917, or were "actual ... litigation costs," RCW 48.30.015(3). The court grants MKB's motion for reimbursement of these expenses.

■ The court, however, is disinclined to award the following categories of expenses as "necessary to establish coverage" or "actual" litigation costs: the mediation fee, meals during working lunches, the cost of a magnifying glass, ferry costs for attorneys commuting from Bremerton into Seattle, the cost of daily trial transcriptions, the cost for hotel rooms near the courthouse for one of MKB's attorneys

and his assistant, the cost of parking for another of MKB's attorneys during trial, and meals for the trial team. The mediation fee is not a litigation cost, nor was it necessary to establish coverage. The cost of meals, working or otherwise, for attorneys or others located in Seattle is an expense that would have been borne irrespective of the litigation or trial. The costs of these meals are not expenses of litigation. *See Castellano v. Charter Commc'ns, LLC,* No. C12–5845 RJB, 2014 WL 1569242, at \*5 (W.D.Wash. Apr. 17, 2014) (declining to award such meals in the context of an award of expenses under WLAD); *see also Conti v. Corporate Servs. Grp., Inc.,* 30 F.Supp.3d 1051, 1084 (W.D.Wash.2014) ("The court will not compensate counsel for any 'working lunch' or 'working dinner' . . . ."). Presumably, the magnifying glass is a tool that has continued to be used even following this litigation, and the court cannot easily classify its cost as "necessary to establish coverage" or an "actual" litigation cost. The court takes judicial notice of the fact that travel by ferry is a regular and normal part of daily commuting in the Puget Sound area, and MKB is not entitled to recoup the local commuting expenses of its lawyers as an expense "necessary to establish coverage" or an "actual" litigation cost. In addition, the cost of hotel rooms and parking near the courthouse during trial for MKB's attorneys who are otherwise located within the Western District of Washington, while a convenience for counsel, is not a cost or expense that can be recouped under the parameters of IFCA or *Panorama Village.* Finally, the court also finds the cost of daily trial transcriptions to be excessive and one that "could have been avoided by simply taking notes." *See id.* Accordingly, the court denies MKB's motion for the foregoing categories of costs and expenses.

## IV. CONCLUSION

As described above, the court GRANTS in part and DENIES in part MKB's motion for attorney's fees, nontaxable costs, and prejudgment interest (Dkt. # 156). MKB is entitled to fees, costs, and prejudgment interest as stated herein. The parties are directed to meet and confer and prepare a proposed order awarding fees, costs, and prejudgment interest that is consistent with this order and that excises those amounts that the court has disallowed. If this final request for agreement proves futile, the parties may submit a single brief that includes separate paragraphs with each party's suggested award with respect to each category delineated above, together with supporting affidavits regarding the appropriate fee, cost, and interest calculations. The parties are direct to present the court with their joint proposed order no later than February 13, 2015.